Junta Administradora del Muelle Municipal de Ponce, demandante y apelada, *v.* P. R. American Sugar Refinery, Inc., demandada y apelante. La Misma, demandante y apelada, *v.* Sucesión J. Serrallés, demandada y apelante. La Misma, demandante y apelada, *v.* Destilería Serrallés, Inc., demandada y apelante.

Núms. 9699, 9700, 9701.—*Sometidos:* Marzo 10, 1949. *Resueltos:* Julio 26, 1949.

*Francisco Parra Capó, Vicente Zayas Pizarro, Orlando J. Antonsanti y Leopoldo Tormes García,* abogados de las apelantes; *Erasto Arjona Siaca,* abogado de la apelada.

El Juez Asociado Señor Marrero emitió la opinión del tribunal.

Las tres demandas radicadas en los casos que figuran en el epígrafe están concebidas substancialmente en idénticos términos. La presentada en el primer caso alega en esencia lo siguiente: Que la actora es una Junta establecida por ordenanza del extinto Consejo Ejecutivo de Puerto Rico, con poderes para operar y conservar el muelle del Municipio de Ponce y con facultades de corporación comercial ordinaria y luego definida como compañía de servicio público por la Ley 70 de 1917; que desde marzo 25, 1933 hasta junio 2, 1940,

ambas inclusives, la demandada embarcó en diversas fechas y por distintos vapores que atracaron al muelle del Municipio de Ponce, utilizando los servicios de almacenaje, carga y trasiego del mismo, mercaderías por las cuales tenía que pagar a la demandante al efectuarse, derechos de carga en la suma de $52,599.42, habiendo satisfecho solamente la suma de $3,953.57 y adeudando la suma líquida de $48,645.85, que la demandada se ha negado a pagar a la demandante, a pesar de estar vencida y de haber sido requerida para ello; y que los embarques de mercaderías a que se refieren los $48,645.85 pendientes de pago no fueron reportados por la demandada a la demandante no obstante haber tenido aquélla durante todo el período alegado un representante permanente situado dentro del edificio del muelle municipal de Ponce, razón por la cual dichos embarques no fueron anotados y registrados en los libros de contabilidad del muelle municipal de Ponce y la Junta demandante no tuvo conocimiento de tal deficiencia de pago hasta el 3 de octubre de 1941, mediante comprobación y búsqueda de fuentes externas a ella.

Con alegaciones similares se reclama de la Sucesión J. Serrallés en el segundo caso la suma de $1,477.50 y en el tercero de la Destilería Serrallés, Inc. la cantidad de $2,502.66.

Luego de solicitarse por las demandadas y de suministrarse por la demandante varios pliegos de particulares, las demandadas radicaron sendas contestaciones enmendadas negando los hechos esenciales de las demandas y alegando como defensas especiales que la demandante no tiene capacidad para demandar; que la demandante está impedida (*estopped*) de reclamar el importe a que se refieren las demandas por haber ella mantenido en todo tiempo en el cargo de Superintendente del Muelle Municipal de Ponce a una persona con autoridad para disponer y atenderlo todo en dicho muelle, y especialmente, recibiendo la carga de las demandadas y de todo el público, embarcándola y prestando todos los servicios para los cuales dicho muelle se estableció, recibiendo

el importe que por esos servicios venían obligadas a pagar las demandadas de acuerdo con las tarifas establecidas en dicho muelle y habiendo pagado éstas por los servicios que el muelle municipal de Ponce les prestó en el período a que se refieren las demandas cerca de $300,000, sin que antes de abril de 1942, fecha en que se radicaron éstas, la demandante ni ningunua otra persona hubiera reclamado absolutamente nada a las demandadas por concepto de servicios que dicho muelle municipal les hubiera prestado, habiéndose establecido como uso y costumbre en dicho muelle municipal para el público y especialmente para las personas que más lo utilizaban el entenderse y pagar por los servicios que se les prestaba, con el Superintendente del muelle, Rafael Torruella Cortada, agente debidamente nombrado por la demandante para dirigir las actividades en el mismo; y que si resultare que el Superintendente del Muelle Municipal de Ponce no hubiera estado autorizado para realizar cobros por los servicios que el muelle municipal hubiera prestado, la demandante está impedida de negar la autoridad de su agente por no haber notificado a las demandadas la revocación o limitación de la autoridad del Superintendente. También alegaron que la acción establecida contra cada una de ellas está prescrita y que las respectivas demandas no aducen hechos constitutivos de causa de acción.(¹)

Los casos fueron vistos conjuntamente en un juicio que se prolongó durante muchos días y en el cual las partes presentaron una multitud de testigos y copiosa prueba documental. Más tarde, la corte dictó sentencia a favor de la demandante y en contra de las demandadas, condenando a la P. R. American Sugar Refinery, Inc. a pagar a aquélla la suma de $40,650 con costas y $4,000 como honorarios de abogado; a la Sucesión J. Serrallés al pago de $1,476.62 con costas y $150 como honorarios de abogado; y a Destilería Serrallés, Inc. al pago de $2,264.23, con costas y $250 como honorarios

(¹)Las contestaciones de las tres demandadas están concebidas *mutatis mutandis* en idéntica forma.

de abogado.(²) De las sentencias así dictadas apelaron las demandadas, habiéndose visto ante nos, al igual que ocurrió en la corte inferior, los casos conjuntamente.

Catorce errores imputan éstas al tribunal a quo. No es menester que los discutamos todos, ni que lo hagamos separadamente. Los primeros tres y el quinto(³) al ser declarado con lugar cualquiera de ellos, meramente ocasionaría la revocación de las sentencias y la desestimación de las demandas por falta de capacidad, o la revocación de las sentencias y la consiguiente devolución dé los casos a la corte inferior para ulteriores procedimientos. No se pondría fin al litigio y poco se adelantaría con ello. El cuarto se refiere a una moción de *nonsuit* declarada sin lugar. Preferimos discutir más bien con amplitud los que se dirigen a los méritos de los recursos. Éstos son los errores sexto al décimotercero, en los cuales se sostiene que la Corte de Distrito de Ponce erró (6) al decidir que solamente con prueba documental podría acreditarse fehacientemente que los desembolsos hechos por las demandadas llegaron a manos de la Junta Administradora del Muelle de Ponce por conducto de un agente autorizado para recibirlos; (7) al resolver que el proceso de pago iniciado por las demandadas se interrumpió al llegar los desembolsos a manos de su agente Sr. Avelino González, y que la prueba documental de las demandadas no revela que el proceso de pago se completase por entrega a funcionario o agente autorizado de la demandante; (8) al ignorar la prueba testifical corrobo-

---

(²)De la suma total reclamada de las demandadas la corte inferior resolvió que habiéndose pagado por éstas a la demandante la cantidad de $8,235.22 (sic) procedía que se hicieran las rebajas correspondientes en la siguiente forma: $7,995.85 a la P. R. American Sugar Refinery, Inc., $0.88 a la Sucesión J. Serrallés y $238.43 a la Destilería Serrallés, Inc.

(³)Los errores 1, 2, 3 y 5 son en síntesis: que la Corte de Distrito de Ponce erró al declarar sin lugar (1) la excepción previa de falta de capacidad en la demandante; (2) la excepción previa sobre defecto de partes demandantes; (3) la excepción previa de que las demandas no aducen una causa de acción; (5) la moción de las demandadas interesando que el Auditor de Puerto Rico produjera el informe que había rendido el investigador Justo Nieves Torres y al negarse a admitir el mismo como evidencia.

rada e incontrovertida de las demandadas, por el hecho de que según ella no estaba apoyada en ningún documento; (9) en la apreciación de la prueba y la credibilidad de los testigos de las demandadas y al resolver, como cuestión de derecho, que por ser algunos testigos empleados de éstas su testimonio no merecía crédito; (10) en la apreciación de la evidencia en el sentido de que la contabilidad de la demandante era lo suficientemente clara para revelar los importes pagados por los servicios del muelle; (11) el resolver que las demandadas no habían hecho el pago de las sumas reclamadas a un funcionario o agente autorizado de la demandante y al decidir que el administrador del muelle, Rafael Torruella Cortada, no estaba autorizado a efectuar cobros por servicios prestados por la dependencia del muelle; (12) en la apreciación de la prueba concerniente a si cierto acuerdo tomado por la demandante fué o no notificado a las demandadas, y (13) al resolver que las demandadas han debido hacer dichos pagos en cheques y no en dinero efectivo.

Como en lo medular los anteriores errores atacan la apreciación de la prueba hecha por el tribunal inferior, una reseña de la misma se hace indispensable. La evidencia testifical y documental, según hemos indicado, es verdaderamente voluminosa. La expondremos, en su consecuencia, tan sólo de modo somero, a grandes rasgos, y pasando por alto en su totalidad el testimonio de aquellos testigos que apenas o nada contribuyen a la solución del verdadero problema que está ante nuestra consideración.

### PRUEBA DE LA DEMANDANTE.

*Justo Nieves Torres* es examinador de cuentas de la Oficina del Auditor de Puerto Rico y como tal investigó los libros de contabilidad de la Junta del Muelle Municipal de Ponce, al igual que los de la Capitanía del Puerto de Ponce, los de distintas compañías de vapores, los de Sucesión J. Serrallés, los de las firmas Carlos Armstrong e Hijos, Porto Rico Iron Works, Ulises Petrili y los de otras firmas, encon-

trando que ciertas cantidades de dinero por concepto de servicios prestados por el Muelle Municipal de Ponce no aparecían ingresadas en los libros de caja de dicho muelle. También examinó el libro de la oficina de embarques de Sucn. J. Serrallés, el cual es llevado por F. Avelino González, así como los *cash vouchers* y el libro de caja de dicha Sucesión. La investigación le tomó como un año. Fué una de carácter general en que examinó todas las transacciones del Muelle Municipal de Ponce durante determinado período. Parte del monto de ciertas facturas marcadas Exhibits Z–1 al Z–192 apareció como ingresado. Debido a las irregularidades halladas por él en la contabilidad del muelle no se formuló acusación contra las demandadas, pero sí contra otras personas. Halló que había diferencias dejadas de ingresar, tanto en relación con las demandadas como en relación con varias otras firmas, aun cuando en cuanto a estas últimas el monto del dinero no era de la importancia del de aquéllas. La embarcadora más importante del muelle lo era la firma Serrallés. Entre las firmas en relación con las cuales también había diferencias estaban West India Oil Company, Shell Company, Carlos Armstrong e Hijos, Joaquín Pou y Ulises Pretili. De 1933 a 1940 aparecen ingresados en los libros de caja del Muelle Municipal de Ponce alrededor de $265,000 por concepto de derechos de carga pagados por las demandadas. La única información relativa al movimiento de carga en el muelle aparece en los libros de caja llevados en el mismo Muelle Municipal. Allí solamente aparecieron cuatro o cinco libros pequeños que contienen algunos datos respecto a ciertos embarques efectuados a través del muelle, pero durante la mayor parte de dicho período él no encontró en el transcurso de la investigación *records* de los embarques que se efectuaron. Ésos fueron los únicos libros que le entregaron, manifestándosele que no había ninguno otro. La prueba que interesaba no le fué fácil conseguirla, pues en el muelle las cosas no estaban ordenadamente llevadas y tuvo que bus-

car todo eso en fuentes extrañas. Las nóminas del muelle aparecían certificadas por el Superintendente y por el listero. El Superintendente para aquella época lo era Rafael Torruella Cortada y el listero Santos González. Antes de acudir a los libros de contabilidad de las demandadas sacó una relación de todos aquellos pagos que por concepto de derechos de carga aparecen ingresados en los libros de caja del Muelle Municipal de Ponce. Después tomó nota en la compañía de vapores de los embarques hechos por las demandadas a través de dicho muelle y entonces hizo el cómputo de los derechos. Una vez encontrada la diferencia que no aparecía ingresada en los libros de caja del muelle, se dirigió a las demandadas para investigar la diferencia. No tuvo dificultad alguna en conseguir los libros de éstas, ni se le puso obstáculo alguno. Los libros de las demandadas reflejaban los gastos semanales de la oficina de embarques de la Sucesión y cada *voucher* reflejaba el pago efectuado a F. Avelino González del total de los gastos anotados por él en el libro, indicándose en cada voucher que eran gastos para la oficina de la Playa. Hay varios cheques librados por las demandadas a favor de González, endosados por éste en blanco y más tarde endosados también en blanco por Rafael Torruella Cortada, que no fueron ingresados en los fondos del Muelle de Ponce. Halló en poder de las demandadas un número de facturas del Muelle de Ponce con la firma de Rafael Torruella Cortada y otras sin tal firma. Las cantidades que aparecen como desembolsos hechos por cada una de las demandadas por los conceptos expresados en los Exhibits Z–1 a Z–192 figuran en los libros de caja de la Sucesión J. Serrallés y en los libros correspondientes de cada una de las demás demandadas. El departamento de embarques en el muelle estaba al cuidado de F. Avelino González y las operaciones en los libros de las demandadas y en los vouchers que él examinó correspondían, no teniendo aquéllos raspaduras, ni alteraciones ni cosas semejantes. El sistema de contabilidad de las

demandadas es bueno. La contabilidad del Muelle Municipal de Ponce la clasificaría, en cuanto a la parte cubierta por su investigación, como muy deficiente. No encontró en el muelle un libro mayor durante ese período y lógicamente debía llevarse a pesar de que en todo ese tiempo existía en el muelle una plaza de tenedor de libros. En los libros del muelle todo lo que se llevaba era una cuenta donde se ingresaban diariamente las remesas que éste hacía al municipio y donde se cargaban los vouchers de gastos que se sometían para su pago. Allí solamente se llevaba una ''cuenta control'' sin más detalles. No encontró en el muelle ningún libro del cual se reflejara que se llevara cuenta corriente debidamente registrada y anotada. Con anterioridad a enero 4, 1935 no halló récord alguno de entradas y salidas de vapores. (La demandante admite que durante los años en controversia las demandadas pagaron por servicios del muelle $260,000, por facturas y embarques, pero sostiene que eso no tiene que ver nada con lo que no han pagado.) En el libro de caja del muelle no se especificaba la forma en que se hacían los pagos, si en cheques o en efectivo. El monto de ciertas facturas que se le presentan asciende a $1,958.18, que es el importe mismo de un cheque expedido por las demandadas a la orden de F. Avelino González para que éste pagara derechos de carga al Muelle de Ponce. Según los endosos ese cheque aparece cobrado por Rafael Torruella, que era para aquel entonces superintendente del muelle. Del importe de ese cheque aparecen ingresados solamente $225.74, $3.41, $55.00 y $72.27 y quedaron en descubierto facturas por $1,290.00 y $537.50. Se expresa en idénticos términos en relación con otros cheques y fondos no ingresados. Preguntado si la conclusión a que llegó como resultado del informe por él rendido ''fué que todos estos gastos de embarques fueron cobrados y no ingresados'' contestó este testigo que llegó a esa conclusión por la investigación que practicó; que se refiere a todas las facturas presentadas por el abogado

de la demandante en el examen directo y al valor total de ellas. No tiene conocimiento directo físico de ello, sino que su conclusión es el resultado de la investigación que practicó. Al examinar los libros de la Sucesión J. Serrallés encontró que ésta había desembolsado estos dineros a favor de Avelino González en la mayor parte de los casos, y en otros a favor de Antonio Soto, para que ellos pagaran al muelle las facturas a que se refiere la cantidad ésta de cincuenta y dos mil seiscientos y pico de dólares. Una vez comprobado allí que dichos dineros llegaron a manos de estos señores para ser pagados al muelle, investigó también con esos señores y ellos le afirmaron haber efectuado el pago. Al ser interrogado Torruella con respecto a estos hechos se abstuvo de declarar y por tanto él llegó a la conclusión prima facie de que estas cantidades fueron entregadas a Torruella y que no habían sido ingresadas por éste en las arcas del Muelle Municipal. De ahí que llegara a la conclusión de que estos dineros fueron *collected*—recaudados—*and not accounted for* —y que así lo hiciera constar. La forma en que las demandadas hacían los pagos por los servicios del muelle no era la mejor, toda vez que las cantidades no se desembolsaban directamente a favor de la acreedora; la contabilidad moderna recomienda que todo pago de alguna suma de consideración se haga en cheque directamente a favor del acreedor. De los records del muelle aparece que las demandadas tenían allí un local en arrendamiento. Durante el período cubierto por su investigación, o sea de 1933 a 1940, ingresaron en los libros del muelle alrededor de $265,000 por concepto de derechos de carga pagados por las demandadas. Ocho mil y tantos dólares expedidos en cheques, que figuran como no pagados por las demandadas ni ingresados por la demandante, fueron en realidad recibidos por ésta. Entre las facturas que aparecen pagadas y que montaban a $265,000 había muchas firmadas por Rafael Torruella, Superintendente del Muelle Municipal de Ponce. Otras apare-

cían sin firmar. Algunas compañías pagaban por cheque por los servicios prestados por el Muelle Municipal y a pesar de ello las cantidades correspondientes tampoco habían sido ingresadas. Entre esos cheques había algunos de la West India Oil Company y de la Shell Company, a favor del Muelle que fueron cobrados por Torruella y que no aparecían ingresados en los libros de caja de dicho muelle. En las actas, papeles, libros o documentos del Municipio de Ponce o de la Junta Administradora del Muelle no encontró constancia alguna demostrativa de que el acuerdo adoptado el 30 de septiembre de 1932 por la Junta, en relación con el reglamento de contabilidad y con la persona a quien debían hacerse los pagos por los servicios prestados por el Muelle de Ponce, fuera notificado en forma alguna, a pesar de que buscó tal constancia.

Juan Cabrer es comerciante y en 14 de octubre de 1932 tomó posesión como vocal de la Junta Administradora del Muelle de Ponce. Al darse lectura al acta de la sesión anterior oyó sobre un reglamento de contabilidad aprobado por unanimidad por la Junta el 30 de septiembre anterior. En su presencia el Lic. F. Manuel Toro, presidente para aquel entonces de la Junta, llamó por teléfono a Pedro Juan Serrallés y recuerda que la conversación se refirió específicamente a que no debía pagarse al manager del muelle, quien en aquella época era Torruella. Si él hubiera tenido conocimiento de los cobros que se hacían anualmente en el Muelle de Ponce no hubiese renunciado. Pedía informes de ello al manager y nunca se le daban, o cuando se le daban éstos no eran a satisfacción de él. El cajero era el único que podía cobrar o pagar.

PRUEBA DE LAS DEMANDADAS.

F. Manuel Toro es abogado y notario y fué varias veces presidente de la Junta Administradora del Muelle Municipal de Ponce, así como miembro de la misma en algunas ocasiones. Para los años 1932 y 1933 era presidente de la

Junta y no recuerda haber notificado a nadie el reglamento que ésta adoptó en 30 de septiembre de 1932. Tuvo sí conversaciones telefónicas y personales con los directores de las demandadas, pero nada les dijo respecto a que según dicho reglamento el cajero del muelle era el único autorizado para recibir los pagos. Ni el 14 de octubre de 1932 ni ningún otro día ha tratado con Pedro Juan Serrallés asunto alguno del muelle. No recuerda haber hecho tal cosa. El recuerdo que tiene es que el reglamento de la Junta no se notificó. Sería una falta, pero no lo hicieron. El acuerdo se tomó por la Junta a fin de impedir que Torruella cobrase, pagase o endosase cheques, pero a la Junta no le constaba a quién cobraba Torruella ni a quién endosaba los cheques.

*Federico Avelino González* es *shipping agent* de las oficinas de las demandadas en la Playa de Ponce. Lleva un libro de todos los gastos semanales de las compañías que representa. El que se le muestra empieza en primero de julio de 1929 y termina en 14 de enero de 1935. Se entendía con Torruella para todo lo concerniente a la carga y descarga de mercancías por el Muelle Municipal, por ser Torruella el único que atendía a esos embarques y desembarques. El importe de todos los derechos devengados por el uso del muelle con motivo de los embarques efectuados por las demandadas él lo pagó siempre a Rafael Torruella, por entender que éste era la persona autorizada para ello. El testigo fué superintendente del muelle durante ocho años y medio, desde su inauguración, y cobraba por los servicios que se prestaban. Víctor Ramos también lo fué y cobraba; ahora lo es Ernesto Ruiz y también ha cobrado. Rafael Torruella era el superintendente y a él le pagaban. En ningún momento se le dijo que Torruella no podía cobrar, ni verbalmente ni por escrito. La práctica era que las demandadas le expidieran cheques a él por el importe total a ser pagado, que ese cheque se le endosara a Torruella o que ''en la propia caja de la Sucesión se cambiara el cheque y se le diera a Torruella en efectivo,

semanalmente, la cantidad que se adeudaba al muelle por los servicios por éste prestados.'' Cuando se entregaban sumas de dinero en efectivo a Torruella esto se hacía públicamente en las oficinas de la Sucesión, en presencia de todo el mundo. El declarante nunca dejó de pagar, siempre le pagó los viernes a Rafael Torruella en la Central Mercedita. (La demandante admite que este testigo declararía que los servicios por todos y cada uno de los renglones que aparecen en el pliego de particulares de los casos los pagó él a Torruella como administrador del Muelle Municipal de Ponce.) Fué a principios del 1941 que el administrador de la Sucesión J. Serrallés dió al testigo instrucciones de que en el futuro no hiciera más pagos al superintendente del muelle. A las compañías de vapores él también les pagaba en la misma forma que lo hacía a Torruella para los servicios del muelle y ninguna de esas compañías ha hecho a las demandadas reclamación alguna. Repreguntado si tenía conocimiento de la existencia de un convenio particular a virtud del cual los pagos hechos a Torruella, sin que éste diera recibo, serían devueltos a las demandadas para enjugar una deuda política de Pedro Juan Serrallés, uno de los principales condueños de éstas, el testigo contestó negativamente.

*Antonio Soto Alvarez* es empleado de las demandadas desde 1922 y trabaja dentro del muelle, siendo su jefe F. Avelino González. Un cheque que se le presenta le fué entregado para pagar el muellaje y él se lo entregó a Torruella Cortada en la ventanilla de Mercedita para pagar ciertas facturas, apareciendo la firma de Torruella al dorso de ese cheque. (Se estipula por las partes que de seguir declarando este testigo se expresaría sobre ciertos vouchers en iguales términos a como lo ha hecho hasta ahora.)

*Martín Rodríguez* era chófer de Torruella. Salía por las mañanas y veía que éste visitaba varias casas comerciales de Ponce, entre ellas las de Bonnin, Cortada y Porto Rico Iron Works y que por lo regular entraba a cobrar dinero del

Muelle. Muchas veces Torruella salía con dinero en efectivo y otras veces con cheques. Luego iban al banco y Torruella depositaba el dinero. Torruella visitaba la Central Mercedita por lo regular los sábados por la mañana o los viernes. Veía que Torruella entraba a la oficina de pago y que recibía dinero. Si se le pagaba mucho dinero Torruella lo metía en un saco y en distintas ocasiones se lo entregaba a él para que lo guardara en el automóvil. Torruella recibía el dinero de Avelino González en la Central Mercedita. Vió que eso ocurría de 1936 al 1940.

*Marcial Hernández* ha sido cajero de la Central Mercedita durante diez y ocho años y conoce a Torruella Cortada, al igual que a Avelino González. La oficina de Serrallés en la Playa, que estaba a cargo de Avelino González, enviaba generalmente los sábados una nómina semanal. El importe de esa nómina el testigo se lo entregaba a González en efectivo, después de haber sido la misma revisada y aprobada por el Auditor de la Central. González entonces entregaba a Torruella lo que había que pagar por servicios prestados por el Muelle Municipal a la Sucesión J. Serrallés y a las otras compañías demandadas. El pago casi siempre se le hacía a Torruella en efectivo.

*Fausto Percy* es maestro de instrucción comercial y contador público autorizado. De 11 de enero de 1933 hasta la primera semana de enero de 1937 fué Tesorero y Director Escolar del Municipio de Ponce. La contabilidad del muelle se llevaba en el muelle mismo y no en la tesorería municipal, y todo pago se le hacía directamente a Torruella Cortada, administrador del muelle.

*Luis Ferré* es ingeniero y vicepresidente y tesorero de la Porto Rico Iron Works. Se le muestran dos cheques y dice que fueron expedidos por la Porto Rico Iron Works contra el National City Bank y contra el Banco de Ponce, respectivamente, y a favor del Muelle Municipal por servicios de muellaje. Ambos cheques están endosados por Rafael Torruella.

Nunca tuvo conocimiento de que éste no estuviera autorizado para cobrar y jamás se recibió en la oficina de la Porto Rico Iron Works comunicación alguna de la Junta Administrativa del Muelle notificándoles que Torruella no estuviera autorizado para hacer cobros.

*Pedro Juan Bonnin* es socio gestor de la firma Bonnin & Compañía. Se le presenta un cheque y dice que es de la sociedad a que pertenece y que fué pagado por el Banco de Ponce al Muelle Municipal. Dicho cheque está endosado por Torruella y nunca supo que éste hubiera sido desautorizado para hacer cobros en representación del muelle. El cheque fué librado a favor del muelle y no a nombre personal de Torruella.

*Guillermo Cortada* pertenece a la firma Ramón Cortada & Compañía. Se le muestra un cheque de la sociedad y dice que está expedido a favor del Muelle de Ponce. Ese cheque fué endosado por Torruella como Superintendente del Muelle. Nunca tuvo conocimiento de que Torruella no tuviera autorización para hacer cobros.

*Guillermo Hoyos* trabaja como escribiente en el Departamento de la Guerra. Entre los años 1937 y 1941 fué Tesorero y Director Escolar del Municipio de Ponce. Nunca tuvo conocimiento de que Torruella, como Superintendente del Muelle de Ponce, no estuviera autorizado para firmar cheques expedidos a favor de dicho muelle.

*Aurelio Miranda Rivera* es *lance corporal* de la Policía Insular y prestó servicios en el barrio Sabanetas, donde está la Central Mercedita, durante cinco años. Él acompañaba al pagador de la Central, Marcial Hernández, a buscar dinero al Banco de Ponce y al regresar de allí, Hernández le daba el dinero a Avelino González, quien se lo entregaba a Rafael Torruella. Eso por lo regular ocurría los viernes o sábados.

*Juan Bautista Toro* es policía insular y prestó servicios en la Central Mercedita durante unos quince años. Conoció a

Rafael Torruella Cortada como administrador del Muelle Municipal de Ponce. (Su testimonio es similar al del anterior testigo.)

*Juan Luis Boscio* es comerciante en Ponce. Durante los años 1933 a 1940 se dedicaba a los mismos negocios que tiene ahora. Su casa era un cliente importante del Muelle Municipal. En muchas ocasiones Torruella Cortada, como Superintendente, le cobraba por los servicios prestados por el muelle. El testigo fué también miembro de la Junta Administradora del Muelle de Ponce.

*Rafael Fourquet* es comerciante y trabaja con Monllor & Boscio, Sucrs. En infinidad de ocasiones Torruella Cortada le traía las facturas por servicios prestados por el Muelle y él se las pagaba mediante cheque a favor del Muelle de Ponce. Nunca supo que Torruella no estuviera autorizado para cobrar por los servicios de muellaje.

Se estipula entonces por las partes que de declarar Jaime Salicrup, de la casa Carlos Armstrong e Hijos, Sucrs.; Rafael Torres, de Sucrs. de Trujillo & Subiñá; Joaquín Pou, y Ramiro Colón, de Cafeteros de Puerto Rico, declararían en forma similar a como ya lo habían hecho Luis Ferré, Guillermo Cortada y Pedro Juan Bonnin, pero aclarándose que estos testigos dirían que los pagos los hacían por cheques.

*Ana Flores* era cajera del Municipio de Ponce y trabajaba bajo la órdenes de Fausto Percy y Guillermo Hoyos. Rafael Torruella Cortada era el Superintendente del Muelle y llevaba remesas del muelle al municipio, lo mismo en cheques que en efectivo. Nunca supo que Torruella no pudiera firmar cheques expedidos a favor del Muelle Municipal de Ponce.

*Justo Nieves Torres* (éste ya había declarado extensamente como testigo de la demandante) manifiesta que según el examen por él practicado había casos de pagos hechos en cheques a favor del Muelle Municipal de Ponce, cuyo importe no había sido registrado en el libro de caja del Muelle Muni-

cipal, ni ingresado en las arcas del Municipio de Ponce y que esos cheques fueron cobrados por Rafael Torruella.

*James M. Giles* ha sido administrador de la Sucesión J. Serrallés desde 1919, así como manager de la refinería. La Sucesión es la que hace los pagos de flete, de muellaje y de los demás gastos de mercancías llevadas al puerto. Los embarques se controlan por el mismo empleado en el muelle. Cuando él llegó a la Central Mercedita encontró que el sistema seguido era pagar al Superintendente del Muelle. En 1940 continuaban pagándole al Superintendente. En 1941 recibieron una carta del Secretario de la Junta Administradora avisándoles que en adelante debían pagar por cheque a favor de la Junta, del cajero de la Junta o del Municipio de Ponce. Con anterioridad al mes de enero de 1941 no recibió notificación alguna sobre el acuerdo tomado por la Junta del Muelle en septiembre 30 de 1932, al efecto de que se desautorizaba a Torruella para cobrar los cargos por concepto de muellaje. Muchas veces Torruella iba a la oficina de la Central Mercedita y alegaba que necesitaba efectivo ese mismo día para pagar los obreros y éste se le entregaba. En los años que Avelino González ha estado actuando como representante de la oficina de embarques de la Sucesión J. Serrallés, la empresa nunca ha tenido ningún caso, fuera de éstos, en que se le haya hecho una reclamación por haber González dejado de pagar. Hasta ahí la prueba.

En innumerables ocasiones hemos resuelto que la apreciación de la prueba hecha por el tribunal inferior será respetada por nosotros a no ser que se nos convenza de que al hacer tal apreciación dicho tribunal cometió manifiesto error o actuó movido por pasión, prejuicio o parcialidad. *Asencio* v. *Am. Railroad Co.*, 66 D.P.R. 227; *Jiménez* v. *Fletcher*, 67 D.P.R. 165, 167; *Ex parte Detrés*, 67 D.P.R. 381; *Ramos* v. *Rosario*, 67 D.P.R. 683, 690; *González* v. *Vélez*, 68 D.P.R. 904, 906; *Camacho* v. *Cía. Popular de Transporte*, 69 D.P.R. 724, 729. El presente, sin embargo, es un caso en

que hemos quedado plenamente convencidos de que tal manifiesto error en la apreciación de la prueba fué cometido. La revocación de las sentencias se impone. El detenido y cuidadoso estudio que hemos hecho de la abundante prueba, testifical y documental, aducida por las partes, nos hace llegar a esa conclusión. Veamos una vez más y a grandes rasgos la evidencia presentada:

El testigo estrella de la demandante, Justo Nieves Torres, practicó un examen minucioso y detallado de los libros de contabilidad de la Junta Administradora del Muelle Municipal de Ponce. Encontró que el sistema de contabilidad allí llevado era deficiente por demás. El dinero que se reclama fué recibido y no ingresado en los libros del muelle. Esto sucedía no sólo con el dinero pagado por las demandadas, si que también por varias otras firmas que utilizaban los servicios del muelle de la demandante y que pagaban en cheques. También examinó los libros de contabilidad de las demandadas, al igual que el de las compañías de vapores y de otras firmas de la localidad. Contrario a lo que ocurría con la de la demandante, la contabilidad de las demandadas era buena, aunque la mejor práctica aconseja que cantidades considerables se paguen por cheques y no en efectivo. Su conclusión como resultado de la investigación por él practicada fué que todas y cada una de las facturas reclamadas por la dèmandante fueron pagadas por las demandadas. El otro testigo de la demandante lo fué Juan Cabrer, quien sólo declaró en relación con una supuesta conversación telefónica celebrada por el Lic. Toro con uno de los oficiales de las demandadas.

La prueba de las demandadas, tanto testifical como documental, fué copiosa. Ella tendió a demostrar, y demostró a nuestro juicio, que todas las sumas reclamadas por la demandante habían sido pagadas a través de sus empleados Federico Avelino González y Antonio Soto a Rafael Torruella Cortada, Superintendente del Muelle Municipal de Ponce durante los años en controversia; que Torruella Cortada estaba

autorizado para recibir tales pagos; que la práctica era expedir cheques a favor de Avelino González o de su ayudante Antonio Soto, por las cantidades necesarias para cubrir los pagos que las oficinas de las demandadas en el Muelle tuvieran que hacer, incluyendo los pagos por los servicios de muellaje; que con frecuencia Torruella Cortada acudía a la oficina que las demandadas tienen en la Central Mercedita y solicitaba que se le pagara en efectivo por los servicios del muelle, y que se le hacían tales pagos casi semanalmente; que a Torruella Cortada con frecuencia también se le pagaba en cheques, siendo los mismos librados por las demandadas a la orden de Avelino González, endosados por éste en blanco y endosados y cobrados más tarde por Torruella; que durante los años en controversia las demandadas pagaron en total por servicios prestados por el muelle una suma en ·exceso de $300,000, o sea tanto los $265,000 que aparecían ingresados en los libros del muelle y del municipio, como las sumas aquí reclamadas, habiéndose pagado tanto los $265,000 ingresados como el total de las sumas aquí en controversia en efectivo o en cheques.

Durante el curso del juicio la demandante asumió posiciones alternativas. Su contención primordial fué la de que las demandadas jamás le habían pagado las sumas reclamadas. Mientras contrainterrogaba los testigos de las demandadas asumió la posición de que Torruella Cortada había recibido los pagos de las cantidades no ingresadas, con el entendido de que el importe de las mismas sería devuelto a las demandadas para enjugar una deuda de origen político contraída por Pedro Juan Serrallés, uno de los miembros principales de las demandadas. Y finalmente, la de que si Torruella recibió pagos de las demandadas por los servicios prestados por el muelle, aquél no estaba facultado para recibirlos ni para obligar a la demandante con su recibo y no ingreso de los mismos en los libros del muelle ni en las arcas del municipio. Su contención primordial no fué probada.

Quedó, por el contrario, desvirtuada con el testimonio de su testigo estelar. La de que los pagos fueron recibidos por Torruella y devueltos a las demandadas para apoyar la candidatura política de uno de sus principales oficiales careció de prueba directa y fué rotundamente negada por testigos de las demandadas. Y la de que Torruella como Superintendente del Muelle no tenía facultad para cobrar por los servicios prestados por el muelle se cae por su propio peso. Como se ha visto, durante los años en controversia la demandante cobró de las demandadas por conducto de Torruella no menos de $265,000, que ingresaron en los libros de aquélla y en los fondos del Municipio. Es ilógico sostener que Torruella, como Superintendente del Muelle, estuviera facultado para cobrar las sumas que realmente ingresaron en el Municipio, y que tales pagos son buenos y válidos, y por otro lado que la Junta demandante no queda obligada por el recibo por Torruella, en su carácter indicado, de otras sumas que éste no ingresó en los libros de la demandante ni en el Municipio.

Por otro lado, las demandadas demostraron no sólo con el testimonio del Lic. F. Manuel Toro, sino con el de muchos otros testigos, que el acuerdo adoptado por la Junta Administradora del Muelle en 30 de septiembre de 1932, no fué jamás notificado a las demandadas, ni a muchas otras entidades que utilizaban los servicios del muelle. También que el importe total reclamádoles ya había sido pagado. Nada hay que impida que una parte o sus empleados declaren en el juicio. Artículo 38 de la Ley de Evidencia. Ni hay razón para que por ese solo motivo su testimonio sea rechazado. *Otero & Núñez* v. *Sucesores de M. Pérez,* 46 D.P.R. 4; *Buxeda, Jr.* v. *Escalera,* 47 D.P.R. 647; *Pueblo* v. *López,* 48 D.P.R. 11; *Sabalier* v. *Iglesias,* 34 D.P.R. 352; y *Sucn. Collazo* v. *Rivera Esbrí,* 26 D.P.R. 274. Es cierto que Avelino González, Antonio Soto, Marcial Hernández, James M. Giles y Juan Bautista Toro eran empleados de las demandadas, pero eso

de por sí no significaba que su testimonio no mereciera crédito, ni que fuera indispensable prueba documental para probar los pagos. Cuanto ellos dijeron fué corroborado por otros testigos y estaba en armonía con la conclusión a que llegó Justo Nieves Torres, testigo principal de la demandante. También armonizaba con los libros de las demandadas y éstas, según se admitió, llevaban un buen sistema de contabilidad. El sereno y detenido estudio que hemos hecho de toda la prueba, repetimos, nos reafirma en el criterio de que la corte inferior cometió manifiesto error en su apreciación.

Dada la conclusión a que hemos llegado es innecesario discutir el décimocuarto error señalado. Éste es al efecto de que la corte a quo erró al condenar a las demandadas al pago de honorarios de abogado.

*Deben revocarse las sentencias apeladas y declararse sin lugar las demandas, con costas a la demandante.*