*Las resoluciones de la Junta de septiembre 22, 1948 y diciembre 22, 1948 serán confirmadas.*

JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, peticionaria, *v.* JUNTA ADMINISTRATIVA DEL MUELLE MUNICIPAL Y MALECÓN DE PONCE Y JUNTA ADMINISTRATIVA DEL NEGOCIADO DE LANCHAS, ANCONES Y MALECÓN DE PONCE, P. R., demandadas.

Núm. 21. *Sometido:* Febrero 10, 1950. *Resuelto:* Marzo 31, 1950.

*Hon. Procurador General Vicente Géigel Polanco, A. Torres Braschi Procurador General Auxiliar* e *Hiram R. Cancio Vilella,* abogado éste de la Junta de Relaciones del Trabajo, abogados todos de la peticionaria; *Erasto Arjona Siaca,* abogado de las demandadas.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

La Junta de Relaciones del Trabajo de Puerto Rico dictó una orden requiriendo a la Junta Administrativa del Muelle Municipal de Ponce y a la Junta Administrativa del Negociado de Lanchas, Ancones y Malecón de Ponce para que negociaran colectivamente con determinada unión. Los patronos no cumplieron con esta orden. Entonces la Junta de Re-

laciones del Trabajo radicó en este Tribunal una petición para que se ponga en vigòr su orden conforme a lo dispuesto en el artículo 9(2) (a) de la Ley núm. 130, Leyes de Puerto Rico, 1945 (pág. 407), según ha sido enmendada por la Ley núm. 6, Leyes de Puerto Rico, 1946 ((1) pág. 19), que en adelante se mencionará como la Ley.

Las demandadas aducen dos contenciones: (1) La Junta no tiene jurisdicción sobre ellas por el hecho de dedicarse al comercio interestatal, estando, por lo tanto sujetas a la Ley Taft–Hartley; (2) pero aun si no estuvieren cubiertas por la Ley Federal, ellas no son patronos dentro del alcance del artículo 2(2) y (11) de la Ley y no están, por lo tanto, sujetas a ésta.

La primera contención de las demandadas requiere muy poca discusión. La Ley Taft-Hartley, en su artículo 2(2), 29 U. S. C. artículo 152 (2), expresamente excluye de su alcance de manera general a los "Estados Unidos o cualquier corporación propiedad exclusiva del Gobierno . . . o cualquier Estado o subdivisión política del mismo . . ." Contrario a nuestra Ley, no excluye de esta exención instrumentalidades incorporadas de gobiernos locales. Las demandadas claramente no están sujetas a la Ley Federal, en virtud del artículo 2(2). Por consiguiente, la Legislatura insular tenía poder para incluirlas en nuestra Ley. *Asociación de Empleados de la Bayamón Transit Co. et al.* v. *Junta Insular de Relaciones del Trabajo, et al.*, 70 D.P.R. 292. La única cuestión sustancial en el caso es por lo tanto si las demandadas están en lo cierto en su segunda contención; es decir, que la intención de la legislatura no fué que ellas estuvieran sujetas a la Ley.

El artículo 2(2) de la Ley dispone que: "El término 'patrono' incluirá ejecutivos, supervisores y a cualquier persona que realizare gestiones de carácter ejecutivo en interés de un patrono directa o indirectamente, pero no incluirá, excepto en el caso de las instrumentalidades corporativas del

Gobierno de Puerto Rico como más adelante se definen, al Gobierno ni a ninguna subdivisión política del mismo; ...".

El artículo 2(11) dispone que: "El término 'instrumentalidades corporativas' significa las siguientes corporaciones que poseen bienes pertenecientes a, o que están controladas por, el Gobierno de Puerto Rico: La Autoridad de Tierras, la Compañía Agrícola, el Banco de Fomento, la Autoridad de Fuentes Fluviales, la Compañía de Fomento de Puerto Rico (Compañía de Fomento Industrial), la Autoridad de Transporte, la Autoridad de Comunicaciones, y las subsidiarias de tales corporaciones, e incluirá también las empresas similares que se establezcan en el futuro y sus subsidiarias, y aquellas otras agencias del Gobierno que se dedican o puedan dedicarse en el futuro a negocios lucrativos o a actividades que tengan por objeto un beneficio pecuniario."

La controversia aquí gira alrededor de si las demandadas están incluídas dentro de la cláusula "aquellas otras agencias del Gobierno que se dedican o puedan dedicarse en el futuro a negocios lucrativos o a actividades que tengan por objeto un beneficio pecuniario". La Junta alega que concluyó como hecho probado que las demandadas eran agencias del gobierno operando con fines de lucro y como el récord contiene evidencia que sostiene esta alegada conclusión de hecho, no podemos intervenir con ella a tenor con lo dispuesto en el artículo 9(2)(b) de la Ley, citando los casos de *Junta de Relaciones del Trabajo de Puerto Rico* v. *Namerow*, 69 D.P.R. 82 y *Rivera* v. *Junta de Relaciones del Trabajo de Puerto Rico*, 70 D.P.R. 5. Pero aquí no existe controversia en cuanto a los hechos. La única cuestión es si bajo los hechos incontrovertidos, las demandadas, como cuestión de derecho, están cubiertas por la Ley. Decir que ésta es una cuestión de hecho sería otorgarle poder a la Junta para decidir lo que los artículos 2(2) y (11) significan y para determinar su propia jurisdicción. Pero en los casos donde la Ley nos confiere jurisdicción para revisar decisiones y órdenes de la Junta, la Ley nos ha investido, y no así a la Junta, con el

158

poder de emitir la decisión final sobre cuestiones de derecho. Tales cuestiones son, desde luego, decididas en primera instancia por la Junta. Y, como una agencia especializada, tratando a diario exclusivamente con estos problemas, sus puntos de vista merecen gran consideración y respeto. Pero habiendo la Legislatura impuesto a este Tribunal el deber de revisar las decisiones de la Junta en cuanto a las cuestiones de derecho, debemos en análisis final ejercitar nuestro criterio independiente sobre las mismas.

■ La Junta Administrativa del Muelle Municipal de Ponce fué creada en virtud de una Ordenanza de 1911, aprobada por el Consejo Ejecutivo y por el Gobernador, en la que se le concedió una franquicia al Municipio de Ponce para construir y operar un muelle público en dicha ciudad. En su sección 9 la ordenanza proveía que el muelle "será administrado por una junta . . . . [la cual] tendrá poderes y deberes similares a los de la junta de directores de una corporación comercial corriente . . .". La sección continúa leyendo como sigue: "El ingreso neto derivado de la operación del muelle y malecón, después de pagarse los salarios y los gastos de operación, será separado por la junta administrativa y el tesorero municipal para pagar los intereses anuales y para aportar la cuota proporcional al fondo de amortización del empréstito municipal tomado a El Pueblo de Puerto Rico, con el propósito de la construcción de estas mejoras, y luego de haberse pagado los intereses y la cuota proporcional al fondo de amortización, la junta administrativa, con la aprobación del consejo municipal, podrá invertir la cantidad del balance sobrante como fuere necesario para la reparación y mantenimiento del muelle y sus dependencias, y para remover cualquier obstáculo al libre uso del mismo. Después que se hayan hecho tales asignaciones, el sobrante será puesto a la libre disposición del consejo municipal para ser legalmente invertido en aquellas mejoras de la ciudad según fuere necesario". Véase *Junta Administradora del Muelle de Puerto Rico v. P. R. American Sugar Refinery Co.,* 70 D.P.R. 361.

El Negociado de Lanchas, Ancones y Malecón fué creado en virtud de una Ordenanza Municipal de Ponce en 1942. Esta ordenanza disponía que el mismo funcionará en igual forma que la Junta del Muelle con los mismos poderes y tarifas cobradas por dicha Junta. Y la ordenanza creando esta última le autoriza a contratar personal y a fijarle la compensación que estimare necesaria.

Creemos que estas disposiciones ampliamente demuestran que las demandadas son "agencias del gobierno insular que se dedican o puedan dedicarse en el futuro a negocios lucrativos o a actividades que tengan por objeto un beneficio pecuniario." Debe recordarse qué en el artículo 2(11) la Legislatura empleó los términos "negocio lucrativo" y "beneficio pecuniario" en un sentido especial. Obviamente, no quiso decir que las ganancias debían redundar en beneficio personal de alguien. Ninguna agencia del gobierno podría jamás obtener legalmente "beneficio" en ese sentido, e interpretar el artículo 2 (11) en esa forma sería insensato. *Cf. Gobierno de la Capital* v. *Consejo Ejecutivo de P. R. et al.*, 63 D.P.R. 434. Más bien creemos que la Legislatura quiso distinguir entre los servicios tradicionales que se prestan al público por el gobierno, tales como sanidad, policía, bomberos, o escuelas, donde los beneficiarios pagan poco o nada, en contraste con servicios tales como transportación, electricidad y acueducto donde el consumidor está supuesto a pagar sustancialmente lo que vale el servicio, no obstante ser de naturaleza pública. Obviamente, las operaciones de las demandadas caen en la categoría de estos últimos. *Cf. Tulier* v. *Autoridad de Tierras*, 70 D.P.R. 267; *Buscaglia, Tes.* v. *Tribunal de Contribuciones*, 66 D.P.R. 659; *La Costa* v. *Tribunal de Distrito*, 67 D.P.R. 171; *People of Puerto Rico* v. *Eastern Sugar Associates, et al.*, 156 F.2d 316, 325 (C.C.A. 1, 1946).

El hecho de que debido a tarifas bajas o a otras razones las demandadas generalmente han perdido dinero en sus operaciones, no afecta la cuestión de si están o no cubiertas por la Ley. Lo importante es si su autoridad o la naturaleza

de los servicios por ellas rendidos las capacitan, si así lo desean, a operar en forma comparable a entidades privadas que puedan dedicarse al mismo negocio. Creemos que las demandadas cumplen con esta norma en igual forma que las instrumentalidades del gobierno específicamente relacionadas en el artículo 2(11).

■ No estamos impresionados con el argumento de que él artículo 2(11) tuvo por miras incluir solamente instrumentalidades del gobierno insular y no agencias como las demandadas, que son instrumentalidades de un municipio. No podemos discernir tal intención del claro y abarcador lenguaje del artículo 2(11). Al referirse a "otras agencias del gobierno" en este contexto, creemos que la Legislatura quiso incluir toda operación que estuviera dentro del ámbito de todo el Gobierno de Puerto Rico y que cumpliera con la norma de operar con lucro, tal y como ésta se define en dicho artículo. Véase *Pueblo ex rel. Castro* v. *Padrón*, 60 D.P.R. 798; *Gobierno de la Capital* v. *Consejo Ejecutivo*, supra. Aun cuando de la faz del estatuto esto no surgiera de manera tan clara, la forma en que la Legislatura enmendó la ley en 1946 lo pondría de manifiesto.(1)

*Se dictará sentencia poniendo en vigor la orden de la Junta de Relaciones del Trabajo.*

---

(1) El artículo 2(11) sustituyó el artículo 2(13) de la Ley núm. 130 de 1945, que leía como sigue: "El término 'instrumentalidades corporativas' se refiere a las corporaciones que posean bienes y que pertenezcan al Gobierno de Puerto Rico o estén bajo su inmediata dirección, incluyendo la Autoridad de Tierras, la Compañía Industrial, la Compañía Agrícola, el Banco de Fomento, la Autoridad de Fuentes Fluviales, el Servicio de Riego de Isabela, la Autoridad de Transporte, la Autoridad de Comunicaciones, el Servicio de Acueductos y Alcantarillados, las empresas similares que se establezcan en el futuro y todas las subsidiarias de empresas de servicio público".