JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, peticionaria, *v.* JUNTA ADMINISTRATIVA DEL MUELLE MUNICIPAL DE PONCE, recurrida.

*Número:* O-85-275     *Resuelto:* 30 de junio de 1988

320

*Leticia Rodríguez García*, abogada de la peticionaria; *Antonio Zapater Cajigas*, abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR ALONSO ALONSO emitió la opinión del Tribunal.

I

La Junta Administrativa del Muelle Municipal de Ponce es una dependencia municipal creada mediante la Ordenanza Municipal Núm. 258 de 20 de noviembre de 1911. La ordenanza le concedió al Municipio de Ponce una franquicia en virtud de la cual éste ha estado operando dicho muelle. Véanse: *Alcalde de Ponce v. Tribunal Superior*, 105 D.P.R. 824 (1977); *Junta Rel. Trabajo v. Junta del Muelle*, 71 D.P.R. 154 (1950).

La Sec. 9 de la referida ordenanza de 1911 dispone que:

La Junta Administrativa del Muelle Municipal de Ponce será conocida como la Junta Administrativa y tendrá control absoluto de la administración, operación y conservación del muelle, y en tanto ello no sea incompatible con los términos . . . de

cualquier hipoteca o cédula de deuda a la cual pueda estar sujeto el muelle, tendrá poderes y deberes similares a los de la Junta de Directores de una corporación comercial corriente . . . .

Dicha Junta tendrá el derecho de emplear el personal que a su juicio fuere necesario para operar adecuadamente dicho muelle . . . y fijar y determinar la compensación de todos sus empleados, así como para fijar un estimado total de ingresos y gastos para propósitos administrativos . . . . (Traducción nuestra.) *Exhibit* D, págs. 3–4.

De conformidad con los poderes que la referida resolución le confiere a la Junta Administrativa del Muelle Municipal de Ponce, ésta contrató los servicios de un grupo de empleados, entre los que se encuentran empleados de construcción, mantenimiento, limpieza y operadores de equipo pesado, así como ejecutivos, administradores, supervisores, capataces, profesionales, empleados de oficina, guardianes y enfermeras. En particular, la Junta Administrativa del Muelle Municipal de Ponce posee la facultad de negociar colectivamente. *Junta Rel. Trabajo v. Junta del Muelle*, supra.

Un grupo de empleados de la Junta Administrativa del Muelle Municipal de Ponce, a la cual en adelante nos referiremos como "el patrono", se organizó colectivamente. Éstos escogieron como sus representantes a la Federación Puertorriqueña de Sindicatos Democráticos, a la cual en adelante nos referiremos como "la unión".

El 30 de abril de 1982 el patrono y la unión firmaron un convenio colectivo. Dicho convenio contiene, entre otros acuerdos, una cláusula relativa a licencia por enfermedad (Art. XI: *Licencia por enfermedad*), la cual dispone lo siguiente:

A. *Todo empleado cubierto por este Convenio tendrá derecho a licencia por enfermedad con sueldo completo a razón de veinte (20) días por cada año de servicio con el Patrono.*

B. La compensación correspondiente a cada día de licencia por enfermedad se computará multiplicando por ocho (8) el

tipo de salario que esté devengando el empleado al tiempo de enfermarse.

C. Salvo en caso de fuerza mayor, el empleado deberá notificar al Patrono, el hecho de su enfermedad a la mayor brevedad posible. El empleado acreditará su enfermedad mediante certificado médico.

D. Agotada la licencia por enfermedad, el Patrono asesorará a los empleados cubiertos por este Convenio con respecto a los derechos que les asistan a tenor con cualquier disposición legal vigente, incluyendo, pero sin que se limite a, el Seguro Choferil, S.I.N.O.T.

E. El Patrono concederá el tiempo necesario, sin descontarle paga a aquellos empleados que tengan que acudir al dispensario del Fondo del Seguro del Estado, a recibir tratamiento ambulatorio por orden facultativa, disponiéndose que el empleado deberá regresar a su trabajo tan pronto termine dicho tratamiento, disponiéndose además, que el empleado deberá mostrar evidencia de que estaba recibiendo dicho tratamiento y que el Patrono implementará medidas de control sobre el tiempo necesario para dichos tratamientos. El día que ocurra el accidente, si el empleado está trabajando y es enviado a su casa o al hospital, recibirá los haberes del día.

F. Los períodos que un empleado esté fuera de su trabajo debido a enfermedad, vacaciones, días feriados o licencias debidamente autorizadas, se considerarán, como tiempo trabajado para los efectos del cómputo de los beneficios marginales.

*Licencia por enfermedad prolongada:*

1. *En casos de enfermedad prolongada, el Patrono, previa solicitud escrita de la Unión y/o del empleado, concederá una licencia sin paga hasta un máximo de ocho (8) meses.*

2. Esta licencia autorizada no afectará los derechos adquiridos a que tiene derecho el empleado bajo los términos y condiciones aquí establecidos.

3. Las enfermedades ocupacionales no estarán inclu[i]das bajo los términos de este Artículo, sin embargo, estarán cubiertos aquellos accidentes ocasionados por otros motivos que no sean enfermedad ocupacional. (Énfasis suplido.) *Exhibit* B, pág. 5.

En 1983 se suscitó una controversia entre el patrono y la unión relacionada con la referida cláusula de licencia por en-

fermedad. El patrono, haciendo alusión al convenio colectivo existente entre las partes, sostenía que los días por enfermedad no utilizados durante un año se perdían y al siguiente año se comenzaba con los veinte (20) días que disponía el convenio. Fundamentaba su alegación en que en el convenio no se había dispuesto nada referente a la acumulación de días por enfermedad no utilizados durante un año. Por su parte, la unión sostenía que el convenio colectivo no contenía una prohibición expresa que impidiera la referida acumulación y, por consiguiente, la acumulación debía inferirse de la legislación laboral que cubría a los empleados del patrono.

Las partes no llegaron a un acuerdo que pusiera fin a la disputa existente. Por tal razón, la unión solicitó la intervención del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos de Puerto Rico. El 27 de marzo de 1984 se celebró la vista de arbitraje del presente caso.

El árbitro determinó que la controversia a ser resuelta se circunscribía a "determinar si los empleados tenían derecho a acumular para los años subsiguientes la licencia por enfermedad acumulada y no usada al terminar el año corriente". *Exhibit* A, pág. 2.

El 31 de mayo de 1984 el árbitro emitió su laudo, el cual en síntesis dispuso que si bien era cierto que el convenio colectivo entre las partes no disponía expresamente que la licencia por enfermedad no utilizada por los empleados se acumularían para los años subsiguientes, sin embargo, el Decreto Mandatorio Núm. 38 (1983), séptima revisión, aplicable a esa industria, en su Art. VIII(1) suplía tal deficiencia.

---

(1) El Art. VIII del Decreto Mandatorio Núm. 38 dispone lo siguiente:

"Todo empleado tendrá derecho a licencia por enfermedad, con sueldo completo, a razón de 1½ días (13 días al año) por cada mes en que haya tenido, por lo menos cien (100) horas de labor. *La licencia por enfermedad no usada por el empleado durante el curso del año se le acumulará a la de los próximos años.* Si

El laudo fue notificado a las partes y se le ordenó al patrono su cumplimiento inmediato. El patrono objetó el mismo por entender que la decisión del árbitro era errónea y no se ajustaba a derecho.

La Junta de Relaciones del Trabajo de Puerto Rico acudió ante nos para que pusiéramos en vigor el laudo emitido por el árbitro. Concedimos un plazo al patrono para que mostrara causa por la cual no se debía poner en vigor el laudo. Éste ha comparecido.

La posición de la Junta de Relaciones del Trabajo de Puerto Rico es que a los empleados del Muelle Municipal de Ponce les aplica la Ley de Relaciones del Trabajo de Puerto Rico y el Decreto Mandatorio Núm. 38 de la Junta de Salario Mínimo de Puerto Rico.

## II

■ Los procedimientos de arbitraje y laudos emitidos en el campo laboral disfrutan de una gran deferencia por parte de los tribunales. "Esta deferencia brindada y la confianza que los laudos representan, han servido como fundamentos para el desarrollo de nuestra doctrina de que serán respetados a menos que se demuestre la existencia de fraude, conducta impropia del árbitro, falta del debido proceso de ley, ausencia de jurisdicción, omisión de resolver todas las cuestiones en disputa, o que sea contrario a la política pública." *S.I.U. de P.R. v. Otis Elevator Co.*, 105 D.P.R. 832, 836 (1977); *J.R.T. v. Hato Rey Psychiatric Hosp.*, 119 D.P.R. 62 (1987); *J.R.T. v. Securitas, Inc.*, 111 D.P.R. 580

---

los días de licencia por enfermedad acumulados excedieran de veintiséis [(26)] días al 30 de noviembre de cualquier año, el patrono vendrá obligado a pagar en efectivo, el período en exceso de dichos veintiséis (26) días, a razón de ocho horas diarias por el tipo por hora regular que esté percibiendo el empleado a esa fecha. El pago sobre el exceso de veintiséis (26) días se efectuará no más tarde del 15 del mes siguiente." (Énfasis suplido.) *Exhibit* C, pág. 12.

(1981); *Colón Molinary v. A.A.A.*, 103 D.P.R. 143 (1974); *J.R.T. v. Cooperativa Cafeteros*, 89 D.P.R. 498 (1963).

■ Esta norma general tiene su excepción: "los tribunales pueden intervenir y revisar si el convenio o acuerdo de sumisión, según sea el caso, consigna expresamente que el [l]audo sea resuelto conforme a derecho, y ello con referencia al derecho aplica[ble]." *S.I.U. de P.R. v. Otis Elevator Co.*, supra, pág. 837. Véanse: *J.R.T. v. Hato Rey Psychiatric Hosp.*, supra; *J.R.T. v. Securitas, Inc.*, supra; *Colón Molinary v. A.A.A.*, supra; *Sonic Knitting Industries v. I.L.G.W.U.*, 106 D.P.R. 557 (1977).

En el caso de autos el convenio colectivo, en su Art. VII, Sec. 2C(9), dispone que "[e]l árbitro al emitir su decisión deberá hacerlo de acuerdo a derecho". *Exhibit* B, pág. 4. En su comparecencia ante nos, el patrono ha alegado que la decisión del árbitro es errónea y no se ajusta a derecho. Bajo estas circunstancias, nuestra intervención con el laudo del árbitro se justifica. *J.R.T. v. Hato Rey Psychiatric Hosp.*, supra; *U.I.L. de Ponce v. Dest. Serrallés, Inc.*, 116 D.P.R. 348 (1985).

## III

■ No cabe duda de que la Junta Administrativa del Muelle Municipal de Ponce constituye un ente jurídico dedicado a negocios lucrativos y que por tanto está comprendida dentro de la definición de "patrono" de la Ley Núm. 130 de 8 de mayo de 1945, Ley de Relaciones del Trabajo de Puerto Rico, 29 L.P.R.A. sec. 61 *et seq.*

En *Junta Rel. Trabajo v. Junta del Muelle*, supra, pág. 159, luego de analizar las funciones de la Junta Administrativa del Muelle Municipal de Ponce y de haber evaluado la ordenanza de 1911, aprobada por el Consejo Ejecutivo y por el Gobernador, la cual creó la Junta Administrativa del Muelle Municipal de Ponce, expresamos:

Creemos que estas disposiciones ampliamente demuestran que las demandadas son "agencias del gobierno insular que se dedican o puedan dedicarse en el futuro a negocios lucrativos o a actividades que tengan por objeto un beneficio pecuniario". . . en un sentido especial.

■■ A base de lo anterior concluimos que la Junta Administrativa del Muelle Municipal de Ponce venía obligada a negociar colectivamente con la unión que representaba a sus empleados. Esto fue así por razón de que entendimos que la Junta Administrativa del Muelle Municipal de Ponce era patrono dentro del alcance de la Ley de Relaciones del Trabajo de Puerto Rico, Ley Núm. 130, *supra*.[2]

■ No obstante, la Junta Administrativa del Muelle Municipal de Ponce no está cobijada por las disposiciones de la Ley de Salario Mínimo de Puerto Rico. *Alcalde de Ponce v. Tribunal Superior*, supra. Nos explicamos.

El caso del *Alcalde de Ponce v. Tribunal Superior*, supra, trataba de una querella presentada contra el Municipio de Ponce por los empleados dedicados a la limpieza y al mantenimiento del muelle del municipio. En dicha querella se reclamó el pago de trabajo realizado por dichos empleados "'en exceso de la jornada legal de ocho horas, durante el día semanal de descanso, durante la hora para tomar alimentos y días feriados, sin que fueran compensados por este trabajo adicional'. . .". Íd., pág. 825. Además se alegó que no fueron

---

(2) Los municipios y sus instrumentalidades tradicionales que no operan como negocios privados, no están facultados a negociar colectivamente con sus empleados. *Plan Bienestar Salud v. Alcalde Cabo Rojo*, 114 D.P.R. 697 (1983); Consejo Asesor del Gobernador sobre Política Laboral, Las Organizaciones *Bona Fide* en el Gobierno de Puerto Rico de 1978. La Ley Núm. 139 de 30 de junio de 1961 (3 L.P.R.A. sec. 755) provee a los empleados municipales la facultad de organizarse en asociaciones *bona fide*, a los fines de promover su progreso social y económico así como su bienestar general, previa certificación de las mismas, como *bona fide*, por el Secretario del Trabajo y Recursos Humanos de Puerto Rico.

compensados a base del salario mínimo a que tenían derecho conforme a las leyes y los reglamentos.

Ante este reclamo, el municipio solicitó la desestimación de la querella fundada en que por ser los querellantes empleados del municipio, no tenían causa de acción bajo la Ley de Salario Mínimo de Puerto Rico, Ley Núm. 96 de 26 de junio de 1956, según enmendada, 29 L.P.R.A. sec. 245 *et seq.*, ni bajo la Ley de Horas y Días de Trabajo, Ley Núm. 379 de 15 de mayo de 1948, según enmendada, 29 L.P.R.A. sec. 271 *et seq.* De acuerdo con el municipio, estas leyes excluían de su aplicación a los empleados municipales.

Al resolver si la Ley de Salario Mínimo de Puerto Rico le era o no de aplicación a los empleados municipales, tomamos en cuenta lo dispuesto por la ley en su Sec. 33 (29 L.P.R.A. sec. 246e). Esta sección lee como sigue:

(a) Las secs. 245 *et seq.* de este título no serán aplicables a:

(1) personas empleadas en el servicio doméstico en una residencia de familia, con excepción de los ch[o]feres;

(2) personas empleadas por el Gobierno de los Estados Unidos de América o por el Gobierno del Estado Libre Asociado de Puerto Rico, con excepción de aquellas agencias o instrumentalidades de éste que operen como negocios o empresas privadas; y

(3) *personas empleadas por los gobiernos municipales.*

(b) Las disposiciones de las secs. 245 *et seq.* de este título no serán aplicables a los administradores, ejecutivos y profesionales. La Junta definirá mediante reglamento dichos términos. (Énfasis suplido.) 29 L.P.R.A. sec. 246e.

Al analizar las referidas disposiciones de la Ley de Salario Mínimo de Puerto Rico expresamos en *Alcalde de Ponce v. Tribunal Superior*, supra, pág. 828, lo siguiente:

Como puede verse, cuando dicha ley se refiere al gobierno estatal hace excepción de las "agencias o instrumentalidades" de dicho gobierno que operen como negocios o empresas privadas, de suerte que la referida ley es aplicable a los empleados estatales que trabajan para dichas "agencias o

instrumentalidades[".] Pero cuando dicha ley se refiere a las *"personas empleadas por los gobiernos municipales" no hace excepción. Así, es forzoso concluir que los empleados del muelle de Ponce, no importa que el muelle sea una "agencia o instrumentalidad" del municipio de Ponce, caen bajo la clasificación de "personas empleadas por los gobiernos municipales" y no están por tanto cubiertos por la Ley de Salario Mínimo.* (Énfasis suplido.)

Siendo ello así, nos tenemos que preguntar si se ajusta a derecho el laudo emitido por el Negociado de Conciliación y Arbitraje del Departamento del Trabajo, cuando éste concluyó que el Decreto Mandatorio Núm. 38 de la Junta de Salario Mínimo de Puerto Rico, adoptado en virtud de la Ley de Salario Mínimo de Puerto Rico, le resulta aplicable a los empleados del Muelle Municipal de Ponce.

## IV

Los decretos mandatorios de salario mínimo son documentos cuasi legislativos y tienen fuerza de ley. *Mendoza v. Junta Salario Mínimo*, 74 D.P.R. 742 (1953). Ellos deben interpretarse de conformidad con las disposiciones de la Ley de Salario Mínimo de Puerto Rico, *Sierra, Sec. Trabajo v. Bird*, 78 D.P.R. 170 (1955), y al igual que todo reglamento no pueden infringir las disposiciones de dicha ley. *Lugo v. Marini*, 72 D.P.R. 517 (1951).

La Sec. 33 de la Ley de Salario Mínimo de Puerto Rico los define como "decreto[s que] fija[n] salarios mínimos aprobados por la Junta de Salario Mínimo [de Puerto Rico] *al amparo de las disposiciones de l[a] se[c]. 245 et seq. de este título* o de la Ley Núm. 8 de [5 de abril de] 1941". (Énfasis suplido.)

Hemos señalado que la Junta de Salario Mínimo de Puerto Rico es el organismo responsable de fijar los salarios mínimos, días de vacaciones y licencia por enfermedad de las industrias de Puerto Rico, al amparo de lo dispuesto en la

Ley de Salario Mínimo de Puerto Rico, según enmendada. *Martín Santos v. C.R.U.V.*, 89 D.P.R. 175 (1963). La Junta de Salario Mínimo de Puerto Rico fija estas condiciones de trabajo mediante la aprobación de decretos mandatorios, y al así hacerlo determina a qué industria, actividad o negocio aplican los mismos. M. Méndez Saavedra, *Decretos Mandatorios*, San Juan, Consulta Legislativa, 1982.

Ante los hechos particulares de autos tenemos que concluir que, toda vez que el Decreto Mandatorio Núm. 38 se adoptó al amparo de la Ley de Salario Mínimo de Puerto Rico, y que la referida ley excluye a los empleados municipales y, por ende, a los de la Junta Administrativa del Muelle Municipal de Ponce de la cubierta de la misma, el Decreto Mandatorio Núm. 38 no le es de aplicación a los empleados de la Junta Administrativa del Muelle Municipal de Ponce.

Sin embargo, habida cuenta de que dicho decreto mandatorio constituye una expresión de la política pública laboral, y que el mismo estaba vigente cuando se negoció el convenio que hoy nos toca interpretar, nada impide que éste se tome en consideración al interpretar el significado y el alcance de las cláusulas relacionadas con la licencia por enfermedad.

## V

La Asamblea Legislativa de Puerto Rico ha considerado los convenios colectivos como instrumentos para la promoción de la política pública laboral del Gobierno. Como tales, están revestidos de interés público. *P.R. Telephone v. Junta Rel. Trabajo*, 86 D.P.R. 382 (1962). Así mismo, es política pública del Estado Libre Asociado de Puerto Rico el favorecer la negociación colectiva y sus mecanismos para resolver las discrepancias entre empleados y patronos. *Nazario v. Tribunal Superior*, 98 D.P.R. 846 (1970).

La función principal del árbitro, en el campo de las relaciones obrero-patronales, es interpretar las cláusulas

de los convenios colectivos. Al ejercer esta función, el árbitro no está limitado exclusivamente al contenido del convenio, sino que puede hacer uso de otras fuentes siempre que no se aparte de la esencia del convenio. La libertad de interpretación del árbitro dependerá de la claridad de las cláusulas del convenio. Una cláusula, cuyo lenguaje parece ser claro, puede ser ambigua si admite que se le dé interpretaciones conflictivas. Dentro de estas limitaciones, el árbitro tiene flexibilidad para emitir su interpretación. *J.R.T. v. National Packing Co.*, 112 D.P.R. 162 (1982).

El árbitro debe ejercer sus funciones con el debido cuidado que exige su investidura. Con frecuencia también tiene que interpretar las tan comunes cláusulas estereotipadas. H. Shulman, *Reason, Contract, and Law in Labor Relations*, 68 Harv. L. Rev. 999 (1955); A.M. Zack y R.I. Bloch, *Labor Agreement in Negotiation and Arbitration*, Washington, Bureau of National Affairs, 1984, pág. 102.

Al interpretar un convenio colectivo, el árbitro debe adscribirle al lenguaje utilizado el significado común del mismo, salvo cuando expresamente se disponga un significado o definición especial; a los términos técnicos les debe dar su significado usual. Debe leer el convenio como un todo y cada parte debe interpretarla en referencia a las demás cláusulas, de forma que le dé efectividad al propósito general del mismo. Los usos y prácticas pasadas deben ofrecerle guías significativas para la interpretación de las cláusulas. El árbitro debe perseguir que la interpretación que haga de las disposiciones del convenio arrojen un significado razonable y efectivo del mismo. C.M. Updegraff, *Arbitration of Labor Disputes*, 2da ed., Washington, BNA Incorporated, 1961, págs. 225–226. Expuesto lo anterior, veamos en detalle la cláusula del convenio en controversia y su relación con otras cláusulas del mismo.

El párrafo "A" de la cláusula en controversia (Art. XI) dispone que todo empleado cubierto por el "Convenio *tendrá derecho* a licencia por enfermedad con sueldo completo a razón de veinte (20) días *por cada año de servicio con el patrono*". (Énfasis suplido.) *Exhibit* B, pág. 5.

Por otra parte, la cláusula que regula lo relativo a licencia por enfermedad prolongada (Art. XI), en su párrafo "1" dispone que en casos de enfermedad prolongada el patrono *"concederá una licencia sin paga hasta un máximo de ocho (8) meses"*. (Énfasis suplido.) *Exhibit* B, pág. 5. Obviamente, ambas cláusulas hay que interpretarlas en forma integral, persiguiendo el propósito general del convenio y confiriendo al mismo un significado razonable y efectivo que se conforme a los usos y prácticas pasadas y que le dé efectividad real a la intención de las partes.

Si el convenio expresamente reconoce que un empleado puede estar enfermo por más de veinte (20) días, y que en dicho caso el patrono *viene obligado a concederle* licencia sin paga *hasta* un máximo de ocho (8) meses, cómo es posible que, en ausencia de una prohibición expresa y habiendo una política pública clara al respecto, interpretemos restrictivamente la cláusula del convenio que provee licencia por enfermedad con sueldo completo a razón de veinte (20) días como una licencia no acumulativa de año en año.

Si a ésto le añadimos lo que dispone la propia cláusula del convenio, esto es, que se tendrá derecho a "veinte (20) días *por cada año de servicio con el Patrono*", no cabe duda que la intención de las partes era que la licencia por enfermedad fuese de tipo acumulativa. (Énfasis suplido.) *Exhibit* B, pág. 5.

En su esencia, la licencia por enfermedad con sueldo es algo más que un beneficio marginal común y corriente de un empleado. Es una necesidad fundamental para el trabajador puertorriqueño que surge de una necesidad in-

voluntaria no imputable al trabajador. Cuando esta licencia se hace acumulativa, tanto el patrono como el empleado derivan beneficios de la misma, pues con ella se disuade el ausentismo y se le provee al trabajador la oportunidad de acumular la licencia para cuando la necesite por razones de enfermedad.

Al interpretar este convenio colectivo, no podemos permitir que tecnicismos, cuya génesis provienen de una hermenéutica legal errónea, derroten conquistas laborales de años.

## VI

Por último, el patrono sostiene que siendo la unión la que preparó sustancialmente el convenio colectivo que ocupa nuestra atención, ella es la responsable por la oscuridad que permea el contrato, y que por tal razón la interpretación del mismo debe hacerse en forma favorable al patrono. Su planteamiento atenta contra la naturaleza intrínseca del convenio colectivo.

Reiteradamente hemos sostenido que el convenio colectivo es un contrato que, como tal, tiene fuerza de ley entre las partes suscribientes siempre que no contravenga las leyes, la moral y el orden público. El mismo promueve la paz y la estabilidad en el campo obrero patronal. Su validez y eficacia, en consecuencia, debe ser siempre objeto del más entusiasta endoso por parte de los tribunales. *U.I.L. de Ponce v. Dest. Serrallés, Inc.*, supra.

En *Beaunit of Puerto Rico v. J.R.T.*, 93 D.P.R. 509, 520 (1966), expresamos que "[t]ambién conviene tener presente, porque parece que se olvida, que las uniones no son las beneficiarias de los convenios colectivos, sino que los beneficiarios son los obreros, en aquella medida en que los convenios les confieren beneficios de cualquier clase".

Siendo el convenio colectivo un contrato entre partes, producto de un proceso deliberativo y de negociación, mal puede un patrono alegar luego que el mismo no le aplica o que sus cláusulas se deben interpretar a su favor por haber sido supuestamente redactadas por la unión.

Coincidimos con el resultado dispuesto por el laudo de arbitraje emitido, independientemente de que nuestros fundamentos sean distintos.

*Se dictará sentencia que ordene que se ponga en vigor el laudo de arbitraje emitido el 31 de mayo de 1984.*

Los Jueces Asociados Señores Rebollo López y Ortiz concurren con el resultado.