ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| JOSÉ SANTIAGO, INC.<br><br>Recurrida<br><br>v.<br><br>UNIÓN DE TRONQUISTAS DE PUERTO RICO<br><br>Peticionaria | KLCE202500466 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Número: SJ2023CV06760<br><br>Sobre: Impugnación o Confirmación de Laudo |

Panel integrado por su presidenta, la Jueza Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm.

Prats Palerm, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de mayo de 2025.

Comparece la Unión de Tronquistas de Puerto Rico ("Unión" o "Peticionaria") mediante *Certiorari* y solicita que revoquemos la *Sentencia* emitida el 28 de marzo de 2025 y notificada el 31 de marzo de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan ("TPI"). Mediante el referido dictamen, el TPI declaró Ha Lugar la demanda instada por José Santiago, Inc ("José Santiago" o "Recurrida"), a los efectos de revocar el laudo de arbitraje emitido en el caso A-21-959, por el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos ("NCA").

Por los fundamentos que proceden, se *expide* el auto de *certiorari* solicitado y se *confirma* el dictamen recurrido.

**I.**

El caso de marras tuvo su génesis procesal el 2 de junio de 2021, cuando la Unión presentó una querella ante el NCA en contra de José Santiago, en el caso A-21-959. La peticionaria adujo que, conforme al Artículo XX del Convenio Colectivo suscrito entre las partes, al liquidar la licencia por enfermedad de los empleados del área del *freezer*, la recurrida

debía incluir un diferencial de $0.30 y $0.70, correspondiente a los empleados diurnos y nocturnos, respectivamente.

Tras varias instancias procesales, el 16 de junio de 2023, el NCA dictaminó un laudo de arbitraje. El NCA especificó que la controversia a resolver era la siguiente:

> Determinar, a base del Convenio Colectivo y la prueba presentada, si el Patrono cumplió con lo establecido en el Artículo XX, Sección 8 del Convenio, al no considerar el pago del diferencial que reciben los empleados diurnos y nocturnos del área del *freezer*, como parte de su jornal regular por hora, al momento de liquidar la licencia de enfermedad acumulada y no utilizada.
>
> De determinar que el Patrono incumplió, la [Á]rbitr[o] proveerá el remedio adecuado. De lo contrario, ordenará el cierre con perjuicio de la querella.[1]

Evaluado el Convenio Colectivo, el NCA concluyó que, según lo pactado en el Artículo XXV, Secciones 3 y 4, el patrono quedó obligado al pago de un diferencial de $0.30 a los empleados diurnos y de $0.70 a los empleados nocturnos, al momento de pagar la licencia por enfermedad acumulada y no utilizada. Siendo así, ordenó a José Santiago al pago de dicha obligación, correspondiente a los tres (3) años anteriores a la presentación de la querella, a saber, 2018, 2019 y 2020.

Insatisfecho, el 14 de julio de 2023, José Santiago presentó una *Petición de Revisión de Laudo* ante el TPI. La recurrida señaló que el NCA cometió los siguientes tres (3) errores: (1) tomar en consideración el alegato presentado por la Unión, a pesar de que no se le notificó; (2) extralimitarse en el Convenio Colectivo, al ordenar el pago del diferencial por los pasados tres (3) años previos a la presentación de la querella; y (3) aplicar la Ley Núm. 180 de 27 de julio de 1998, según enmendada, conocida como la *"Ley de Vacaciones y Licencia por Enfermedad de Puerto Rico"*, 29 LPRA sec. 250 *et. seq.*, cuando esta excluye de su aplicación a los empleados cubiertos por un Convenio Colectivo.

El 12 de septiembre de 2023, la Unión instó una *Moción de Desestimación por Falta de Notificación*. En síntesis, la peticionaria alegó

---

[1] Apéndice de la parte peticionaria, pág. 65.

que, el foro de instancia carecía de jurisdicción para atender la revisión, debido a que el recurso no se le notificó a su representante legal.

El 21 de septiembre de 2023, José Santiago notificó su *Oposición de Moción de Desestimación.* La recurrida señaló que, la notificación del recurso de revisión fue enviada al mismo correo electrónico donde, durante el proceso de arbitraje, le había notificado todos los escritos.

Consecuentemente, el 11 de octubre de 2023 el foro de instancia emitió una *Resolución,* notificada el día siguiente, mediante la cual denegó la solicitud de desestimación peticionada por la Unión. Asimismo, le concedió treinta (30) días a la peticionaria para presentar su oposición al recurso.

Transcurrido más de un (1) año, sin que la Unión cumpliera con lo ordenado, el 28 de marzo de 2025, el TPI dictaminó una *Sentencia,* notificada el 31 de marzo de 2025. Aquilatada la prueba documental, el foro recurrido determinó que el NCA se excedió en la autoridad conferida por el Convenio Colectivo, al establecer que el patrono debía pagar la licencia de enfermedad no utilizada, contando el diferencial para los años 2019, 2020 y 2021. Así dispuesto, el TPI expuso que el Convenio Colectivo establecía que las querellas debían presentarse a más tardar cinco (5) días, desde que surgía una reclamación. Por lo tanto, el foro de instancia concluyó que lo determinado por el NCA excedía el límite de sumisión.

A su vez, el TPI señaló que el NCA incidió al aplicar la Ley 180-1998, *supra,* debido a que el propio estatuto establecía que no era aplicable a empleados cobijados por un Convenio Colectivo suscrito por una organización obrera y un patrono. Por todo lo cual, el foro de instancia revocó el laudo de arbitraje emitido por el NCA.

Sobre la falta de notificación del alegato presentado durante el procedimiento de arbitraje, el foro de instancia particularizó que el asunto fue traído ante la atención del NCA, a través de una comunicación escrita, en la cual José Santiago solicitó que el documento no fuera considerado. No obstante, el foro de instancia determinó que, según el *Reglamento para*

*el orden interino de los servicios del Negociado de Conciliación y Arbitraje*, quedaba a la discreción del árbitro dar por no puesto un escrito que no fue adecuadamente notificado. Ante ello, el TPI concluyó que el NCA no incidió al tomar en consideración el alegato de la Unión, a pesar de su falta de notificación.

Inconforme, el 30 de abril de 2025, la Unión acudió ante nos mediante *Certiorari* y le imputó al foro de instancia la comisión de los siguientes errores:

> **Incurrió en error el Honorable Tribunal de Primera Instancia al revocar el laudo a pesar [de] que no tenía jurisdicción para ello toda vez que la notificación del patrono del recurso de revisión no fue conforme a derecho.**

> **Incurrió en error el Honorable Tribunal de Primera Instancia al revocar el laudo ignorando así el derecho aplicable y la doctrina de deferencia a los laudos de arbitraje.**

El 9 de mayo de 2025, la parte recurrida instó su *Oposición a que se expida el auto de Certiorari*. Perfeccionado el recurso y contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

## -A-

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. En esencia, se trata de un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *Rivera et als. v. Arcos Dorados,* 212 DPR 124 (2023); *800 Ponce de León Corp. v. American International Insurance*, 205 DPR 163 (2020); *Medina Nazario v. McNeil Healthcare, LLC,* 194 DPR 723, 728-729 (2016); véase, además, Art. 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491. Por tanto, la expedición del auto de *certiorari* descansa en la sana discreción del tribunal revisor. *Íd.; IG Builders et al v. BBVAPR*, 185 DPR 307, 337-338 (2012).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, delimita expresamente las instancias en las que este Tribunal de Apelaciones puede expedir los recursos de *certiorari* para revisar resoluciones y órdenes interlocutorias del foro de Instancia. *800 Ponce de León Corp. v. American International Insurance, supra*; *Scotiabank de Puerto Rico v. ZAF Corporation*, 202 DPR 478, 487 (2019). En lo pertinente, la referida regla dispone lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari, en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. 32 LPRA Ap. V, R. 52.1.

Aun cuando al amparo del precitado estatuto adquirimos jurisdicción sobre un recurso de *certiorari*, la expedición del auto y la adjudicación en sus méritos es un asunto discrecional. No obstante, tal discreción no opera en el abstracto. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008). La Regla 40 del Reglamento del Tribunal de Apelaciones establece los criterios que este foro tomará en consideración para ejercer prudentemente su discreción para expedir o no un recurso de *certiorari*, a saber:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.
> B. Si la situación de hechos planteada es la más indicada para analizar el problema.
> C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.
> D. Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B.

De otra parte, este Tribunal solo intervendrá con las determinaciones discrecionales del Tribunal de Primera Instancia, cuando se demuestre que hubo un craso abuso de discreción, prejuicio, parcialidad o error manifiesto. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). En el ámbito jurídico la discreción ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013). La discreción se nutre de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia. *Íd.* Por lo anterior, un adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. *Umpierre Matos v. Juelle Albello*, 203 DPR 254, 275 (2019); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

**-B-**

El arbitraje es un método alternativo de solución de disputas, el cual está disponible como una alternativa al litigio tradicional. *Aut. Puertos v. HEO*, 186 DPR 417, 424 (2012). Tal proceso le impone un carácter excluyente al proceso judicial, ya que una cláusula de arbitraje es un contrato que impide a los jueces y tribunales conocer en primera instancia de los conflictos o cuestiones litigiosas sometidas a arbitraje. *Indulac v. Central General de Trabajadores*, 207 DPR 279, 293 (2021).

En el ámbito laboral, el arbitraje surge como parte del proceso de negociación colectiva, cuyo fin es preparar un convenio colectivo. *Indulac v. Central General de Trabajadores, supra*, pág. 294, citando a *Aut. Puertos HEO, supra*, pág. 424. El convenio colectivo es "el acuerdo por escrito entre una organización obrera y un patrono en el que se especifican los términos y condiciones de empleo para los trabajadores cubiertos por el contrato, el estatus de la organización obrera y el procedimiento para resolver las disputas que surjan durante la vigencia del contrato". *C.O.P.R. v. S.P.U.*, 181 DPR 299, 319 (2011).

Los procedimientos de arbitraje y laudos emitidos en el campo laboral disfrutan de una gran deferencia por parte de los tribunales. *J.R.T. v. Junta Adm. Muelle Mun. de Ponce*, 122 DPR 318, 325 (1941). Cuando se acuerda el uso del arbitraje como mecanismo para ajustar las controversias, se crea un foro sustituto a los tribunales de justicia, cuya interpretación merece nuestra deferencia. *López v. Destilería Serrallés*, 90 DPR 245 (1964); *JRT v. Junta Adm. Muelle Mun. de Ponce, supra*. Nuestro más Alto Foro ha expresado que, aunque la intervención no esté vedada, ante un convenio de arbitraje, lo más prudente es la abstención judicial. *U.C.P.R. v. Triangle Engineering Corp.*, 136 DPR 133, 142 (1994). Sin embargo, la deferencia brindada al procedimiento de arbitraje cede cuando se demuestra la existencia de: (1) fraude; (2) conducta impropia del árbitro; (3) falta del debido proceso de ley; (4) ausencia de jurisdicción; u (5) omisión de resolver todas las cuestiones en disputa o que sea contrario a la política pública. *C.O.P.R. v. S.P.U., supra*, pág. 369.

Por otra parte, si las partes pactan que el laudo arbitral sea conforme a derecho, el árbitro no puede ignorar o dejar pasar por desapercibidas las normas interpretativas, en el campo laboral, de derecho sustantivo emitidas por el Tribunal Supremo de Estados Unidos, y el de Puerto Rico. *JRT v. Hato Rey Psychiatric Hospital*, 119 DPR 62, 68 (1987). Así dispuesto, los tribunales podrán corregir errores jurídicos, en atención al derecho aplicable. *Íd*. En tal supuesto, es la norma que los foros judiciales apelativos tendrán la autoridad para revisar todas las cuestiones de derecho sustantivo resueltas por el árbitro para poder determinar si son correctas. *C.O.P.R. v. S.P.U., supra*, pág. 370. En otras palabras, procede la anulación del laudo solo si no se ha resuelto la controversia conforme a derecho. *Íd*.

Atinente a la controversia ante nuestra consideración, el Artículo XX del Convenio Colectivo suscrito entre las partes, regula lo concerniente a las licencias por enfermedad de los empleados. En lo aquí pertinente, el Artículo XX establece lo siguiente:

Sección 3. **La compensación por cada día de licencia por enfermedad se determinará multiplicando por ocho (8) el jornal regular por hora que el empleado devengue al momento de disfrutarla.**

[...]

Sección 8. La compañía le pagar[á] en efectivo a cada empleado cubierto por este Convenio Colectivo el cien por ciento (100%) de la licencia por enfermedad acumulada y no utilizada que él tuviere, si alguna, dejando en reserva lo que por ley se requiera. **[D]icho pago se hará anualmente el día de pago que inmediatamente antecede el [D]ía de las [M]adres**. Cada día de licencia por enfermedad la compañía pague al empleado en efectivo eliminar[á] un (1) día de licencia por enfermedad acumulada. Para cualificar para este pago deben ser empleados activos y/o aquellos que se encuentran en una licencia por enfermedad incluyendo cualquier empleado que est[é] en una licencia sin paga por accidente del trabajo y que tengan acumulado el tiempo estipulado. Se excluye todo aquel empleado que previo a la fecha del pago haya voluntariamente renunciado o abandonado su empleo y aquellos que hayan sido despedidos por justa causa.

[...]

(Énfasis suplido)

Por otro lado, el Artículo XVI del Convenio Colectivo estipula el procedimiento de quejas y agravios que surjan en cuanto a la interpretación, aplicación o cumplimiento del convenio. Particularmente, el Artículo XVI, Sección 5 señala que el procedimiento de quejas y agravios consiste de:

(a) PRIMER PASO: Cualquier empleado o grupo de empleados que se considere perjudicado por alguna acción de la Compañía deberá presentar su queja por escrito, primeramente[,] al gerente del querellante o su representante designado, ya sea para sí o por mediación del delegado de la unión, **dentro de cinco (5) días laborables a partir de la fecha en que surja dicha reclamación**, queja o agravio (o), en caso de querellas disciplinarias o de antigüedad, desde que tuvo conocimiento de los hechos. El gerente o su representante designado dará su contestación no más tarde de los siguientes (5) días laborables, a partir de la fecha en que la queja le haya sido presentada para su consideración. En caso de que la queja permanezca sin resolverse en este paso se continuara la tramitación de la misma como se indica en el Segundo Paso.

(b) SEGUNDO PASO: En caso de que la queja no haya sido arreglada satisfactoriamente en el primer paso, esta se presentará por la unión al gerente de Recursos Humanos o su representante designado, dentro de los siguientes cinco (5) días laborables desde la fecha en que el gerente del querellante o su representante designado contestó o debió contestar la querella, según el primer paso, o podrá obviarse este segundo paso y proceder a arbitraje por mutuo acuerdo escrito entre las partes. El gerente de recursos humanos o su representante dará su contestación no más tarde de los siguientes cinco (5) días laborables.

(c) TERCER PASO: Si la querella no es resuelta satisfactoriamente en el segundo paso, el Secretarlo Tesorero de la Unión o su

> representante designado pedirá una reunión con el Gerente de Recursos Humanos o quien este designe en su representación, dentro de los cinco (5) días laborables siguientes al recibir la contestación del gerente de recursos humanos en el segundo paso para tratar de resolver la misma. El gerente de recursos humanos o su representante dará su contestación no más tarde de los siguientes cinco (5) días laborables, desde la fecha en que se llevó a cabo la reunión o fecha en que venció el plazo para solicitar dicha reunión. Esta reunión se tiene que llevar a cabo dentro de un plazo no mayor a 10 días laborables desde que es solicitada. Las partes redactaran y firmaran una minuta en conjunto antes de concluir la reunión.

[...]

De no llegarse a un acuerdo en la reunión descrita en el tercer paso, el Secretario Tesorero de la Unión **tendrá diez (10) para decidir si somete o no el caso a arbitraje, dentro de dicho término**. (Énfasis suplido). Artículo XVI, Sección 8 del Convenio Colectivo. Si las partes deciden someter el caso a arbitraje, el laudo emitido deberá ser **conforme a derecho** en cuanto a la decisión y remedio emitido por el árbitro. Artículo XVI, Sección 11 del Convenio Colectivo.

Finalmente, como norma general, las controversias relacionadas al salario mínimo, vacaciones y las licencias por enfermedad serán atendidas conforme estipula la Ley 180-1998, *supra*. Sin embargo, a manera de excepción, el Artículo 6 (c) de la referida Ley, 29 LPRA sec. 250f, esboza lo siguiente:

> Las disposiciones de esta Ley **no serán aplicables a empleados cubiertos por un convenio colectivo** suscrito por una organización obrera y un patrono, siempre que su salario sea igual o mayor al establecido al amparo de las disposiciones de esta Ley.

(Énfasis suplido)

**III.**

Mediante el primer señalamiento de error, la parte peticionaria arguye que el TPI carecía de jurisdicción para atender el caso de epígrafe, ya que el recurso de revisión de laudo no fue notificado a su representante legal. En específico, la Unión señala que José Santiago conocía quien era su representante legal, ya que la había representado durante el procedimiento de arbitraje.

Surge del expediente que, el foro de instancia denegó la solicitud de desestimación, por falta de jurisdicción, instada por la Unión, tras

determinar que el recurso de revisión fue notificado a la propia dirección provista por la parte peticionaria.[2] Además, quedó evidenciado que, José Santiago notificó el recurso de revisión a la misma dirección a la cual le notificó a la Unión los escritos presentados ante el NCA.

A su vez, cabe señalar que, el recurso de revisión instado ante el foro de instancia era un procedimiento independiente al llevado a cabo ante el NCA. Es por esto que, contrario a lo alegado por la Unión, resultaba irrelevante si el patrono conocía quién la representó en el procedimiento de arbitraje, toda vez que, en el pleito instado ante el TPI, aún no había comparecido con representación legal. Por tanto, al desconocer quien asumiría la representación legal de la Unión ante el TPI, José Santiago únicamente tenía la obligación de notificarle el recurso a la parte aquí peticionaria. En virtud de lo anterior, resulta forzoso concluir que el recurso de revisión de laudo fue notificado conforme a derecho.

A través de su segundo señalamiento de error, la Unión sostiene que el TPI ignoró el derecho aplicable. En específico, la peticionaria aduce que, conforme a la Ley 180-1998, *supra,* el NCA debía otorgar como remedio el pago del diferencial, correspondiente a los tres (3) años que anteceden el inicio del procedimiento de arbitraje. De igual manera, arguye que, en nuestra jurisdicción opera la doctrina de deferencia a los laudos de arbitraje y, como resultado, el foro de instancia debía abstenerse de intervenir en lo resuelto por el NCA.

Es un hecho incontrovertido que, en el caso de autos, las partes pactaron mediante el Convenio Colectivo que el procedimiento de arbitraje sería conforme a derecho. Ante ello, los tribunales estamos facultados para revisar si el árbitro incidió en la apreciación de los hechos y el derecho aplicable. Siendo así, no le asiste la razón a la parte peticionaria al alegar que el foro primario erró al no otorgarle deferencia a lo resuelto por el NCA.

---

[2] Apéndice de la parte peticionaria, pág. 10.

Ahora bien, conforme surge del Artículo 6 (c) la Ley 180-1998, *supra*, la Asamblea Legislativa expresamente excluyó de su aplicación a aquellos empleados cobijados por un convenio colectivo. En otras palabras, el NCA estaba impedido de aplicar las disposiciones del referido estatuto. Así dispuesto, concordamos con el foro de instancia, a los efectos de establecer que el NCA incidió al aplicar las disposiciones de la Ley 180-1998, *supra*.

Por otro lado, el Artículo XVI, Sección 5 del Convenio Colectivo estipula que, cualquier empleado afectado por una acción del patrono deberá presentar su queja dentro del término de cinco (5) días. De no llegar a un acuerdo, luego de presentar la queja, el empleado tendrá diez (10) días para someter la reclamación al procedimiento de arbitraje. A tenor con lo establecido en el Convenio Colectivo, concluimos que el foro primario no cometió un error al determinar que la presente reclamación fue presentada fuera del límite de sumisión.

Finalmente, debemos señalar que, al discutir el segundo error, la propia parte peticionaria reconoció que, "[e]n este caso el Honorable Árbitro **no sólo realizó una determinación que no fue conforme a derecho[,] sino que enmendó el convenio colectivo entre las partes**". (Énfasis suplido).[3]

**IV.**

Por los fundamentos que anteceden, se expide el auto de *certiorari* solicitado y se *confirma* el dictamen recurrido.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal. La Jueza Álvarez Esnard concurre sin voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[3] Recurso de *Certiorari*, pág. 5.