ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| DEPARTAMENTO DE RECURSOS NATURALES Y AMBIENTALES Parte Recurrente | | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan |
|---|---|---|
| vs. | KLCE202301425 | Caso Núm. SJ2023CV04237 (Salón 903) |
| SERVIDORES PÚBLICOS UNIDOS DE PUERTO RICO (AFSME) Parte Recurrida | | Sobre: Reprimenda Escrita Kenneth Morales Valle Revisión de Laudo de Arbitraje Obrero-Patronal Núm. L-23-010 Para el Caso AQ-21-0427 |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres y la Jueza Rivera Pérez.

Rivera Pérez, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, 22 de enero de 2024.

Comparece ante nos el Departamento de Recursos Naturales y Ambientales (en adelante, DRNA) y nos solicita la revocación de la *Sentencia* emitida el 10 de noviembre de 2023, y notificada el 14 de noviembre de 2023[1] por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, TPI). Mediante dicha *Sentencia* el TPI declaró No Ha Lugar el recurso de revisión judicial de laudo de arbitraje presentado por el DRNA, sosteniendo la validez del Laudo de Arbitraje Núm. L-23-010, emitido por la Comisión Apelativa del Servicio Público (en adelante, CASP) a favor de los

---

[1] Anejo V de la *Petición de Certiorari*, a las págs. 349-364.

Servidores Públicos Unidos de Puerto Rico (AFSME, en adelante SPU o Unión).

Por los fundamentos que expondremos a continuación expedimos el auto de *Certiorari* solicitado y confirmamos el dictamen recurrido.

**-I-**

El 14 de octubre de 2021, la SPU radicó a nombre del Sr. Kenneth Morales Valle (en adelante, Sr. Morales Valle), una solicitud de Arbitraje de Quejas y Agravios en CASP, en contra de DRNA.[2] Así las cosas, el Sr. Santos Colón Quiñones, Director Interino de la División de Métodos Alternos, emitió una notificación de solicitud de servicios de arbitraje de quejas y agravios señalando vista para el 11 de agosto de 2022.[3]

Una vez celebrada la vista de arbitraje, en la cual las partes tuvieron la oportunidad de interrogar, contrainterrogar testigos y de presentar toda la prueba documental para defender sus correspondientes posturas, el caso quedó sometido para su adjudicación.

El 10 de abril de 2023, la CASP emitió el Laudo de Arbitraje Obrero-Patronal Núm. L-23-010 en el caso AQ-21-0427, notificado al día siguiente, en el cual la sumisión[4] en controversia a resolver

---

[2] Apéndice Anejo I de la *Petición de Certiorari*, a las págs. 81-91.

[3] *Id.*

[4] Las partes no acordaron la sumisión, por lo que radicaron sus respectivos proyectos:

**Proyecto de Sumisión de la Unión:**

    a. Que esta [H]onorable Comisión determine si conforme a derecho, Convenio Colectivo y Prueba desfilada, procede la Reprimenda Escrita así como el cobro impuesto al Vigilante Keneth Morales.

    b. De determinar que no procede la reprimenda escrita ni el cobro, se ordenen el DRNA a eliminar del expediente de personal dicha medida, así como cualquier otro documento relacionado con la misma.

**Proyecto de Sumisión de la Agencia:**

    a. Que esta Honorable Comisión determine si tiene jurisdicción para atender controversias sobre cobro o facturas a emitirse a empleados que no est[á] madura.

    b. Que esta Honorable Comisión determine si conforme al Convenio Colectivo, el derecho aplicable y la prueba desfilada en vista, la Reprimenda Escrita impuesta al empleado estuvo justificada o no.

era la siguiente: "[d]eterminar conforme a los hechos, convenio colectivo y el derecho aplicable si la Reprimenda Escrita impuesta al Sr. Kenneth Morales Valle estuvo justificada o no". Una vez emitido el laudo por la CASP se ordenó al DRNA dejar sin efecto la Reprimenda Escrita determinando que "conforme a los hechos, convenio y derecho aplicable", la misma no estuvo justificada debido a que el DRNA incumplió con el término dispuesto en el Artículo 28 del Convenio Colectivo Unión Cuerpo de Vigilantes del DRNA Local 3647 SPUPR Concilio 95 AFSCME.[5] CASP en el laudo emitido realizó las siguientes determinaciones de hechos:[6]

1. El Sr. Kenneth Morales Valle ostenta el puesto de Vigilante en la AGENCIA.

2. El 3 de febrero de 2019, el QUERELLANTE tuvo un accidente en el vehículo oficial con tablilla GE-08613.

3. La AGENCIA no realizó una investigación previa a imponer la medida disciplinaria.

4. El 21 de septiembre de 2021, el Sr. Rafael Machargo Maldonado, secretario le notificó al QUERELLANTE una Reprimenda Escrita.

De conformidad a las determinaciones de hechos realizadas por CASP en el procedimiento de arbitraje respecto a la Reprimenda Escrita Impuesta al Sr. Morales Valle emitió el Laudo siguiente:

Se determina conforme a los hechos, convenio y derecho aplicable que la Reprimenda Escrita impuesta al Sr. Kenneth Morales Valle no estuvo justificada. Se le ordena a la AGENCIA dejar sin efecto la misma. Se [o]rdena, además[,] a notificarle al QUERELLANTE y la UNIÓN que la misma se dejó sin efecto. Todo lo anterior dentro de treinta (30) días a partir de la fecha de este Laudo.[7]

Inconforme, el DRNA el 8 de mayo de 2023 presentó ante el TPI *Revisión de Laudo* para impugnar el Laudo AQ-23-0 10.[8] En

---

c. Que de haber sido impuesta justificadamente y correctamente la Reprimenda Escrita se desestime y archive la apelación de epígrafe. *Id.*, a la pág. 82.

[5] *Id.*
[6] *Id.*, a la pág. 83.
[7] *Id.*, a la pág. 88.
[8] *Id.*, a las pág. 4-19.

síntesis, el DRNA argumentó que la investigación de un accidente vehicular en el cual está involucrado un vehículo oficial propiedad del Estado le corresponde realizarla de manera exclusiva a la ASG, y el DRNA no puede imponerle a esa agencia término para realizar su investigación. Además, arguyó que la DRNA no tiene que una investigación adicional a la que realiza la ASG. Por último, el DRNA sostuvo que la Artículo 28 del Convenio Colectivo no era de aplicación al caso de autos. El 22 de mayo de 2023, el foro primario dictaminó orden, notificada al día siguiente, requiriéndole a la SPU exponer su posición sobre el recurso de revisión de laudo, ello dentro del término de cuarenta y cinco (45) días.[9]

El 19 de julio de 2023, la SPU presentó en el foro primario su *Oposición a Recurso de Revisión Judicial de Laudo.*[10] En su escrito, la SPU arguyó que el Artículo 28 del Convenio Colectivo si es de aplicación al caso, y que la agencia incumplió con el término dispuesto para realizar una investigación sobre los hechos que motivaron la acción disciplinaria, por lo que procede dejarla sin efecto. El 15 de septiembre de 2023, el DRNA presentó una *Dúplica a Oposición a Recurso de Revisión Judicial de Laudo,* en la cual reiteró sus planteamientos.[11]

Así las cosas, el TPI dictó *Sentencia* el 10 de noviembre de 2023, y notificada el 14 de noviembre de 2023, en el cual el foro primario entre sus determinaciones de hechos resaltamos las siguientes:[12]

1. El DRNA y AFSMCE pactaron el Convenio Colectivo el 15 de mayo de 2012.

[…]

14. El 29 de abril de 2021, el Programa de Transporte de la Administración de Servicios Generales de Puerto Rico (ASG) emitió un Informe de Investigación y Recomendación (Informe) sobre un accidente de un

---

[9] Apéndice Anejo II de la *Petición de Certiorari*, a la pág. 286.
[10] Apéndice Anejo III de la *Petición de Certiorari*, a las págs. 287-298.
[11] Apéndice Anejo IV de la *Petición de Certiorari*, a las págs. 299-348.
[12] Apéndice Anejo V de la *Petición de Certiorari*, a las págs. 352, 354-355.

vehículo marca Jeep, tablilla GE-086 13, ocurrido el 3 de febrero de 2019 mientras lo manejaba Morales Valle.[13]

15. Según el Informe, en el accidente hubo negligencia por parte de Morales Valle y la compañía de seguros MAPFRE cubrió $179.00 de los daños ocasionados al vehículo.[14]

16. El Informe incluyó la recomendación de que el DRNA tramitara el cobro de los remanentes $124.00 de los daños a Morales Valle.

17. El 6 de mayo de 2021, el Informe fue recibido en la oficina del Secretario de la DRNA.

18. El 16 de agosto de 2021, la Oficina de Recursos Humanos del DRNA le envió a la Oficina de Asuntos Legales una carta sobre el Informe.[15]

19. La carta de la Oficina de Recursos Humanos incluyó una recomendación para aplicarle a Morales Valle una reprimenda escrita y el pago de $124.00 por concepto de su totalidad no sufragada por MAPFRE.

20. El 14 de septiembre de 2021, el señor Rafael A. Machargo Maldonado, Secretario del DRNA; el Lcdo. Hiram Zayas Rivera, Director Interino de la Oficina de Asuntos Legales; y la Lcda. Raquel Román Hernández, abogada de Asuntos legales, firmaron el documento titulado "Recomendación Legal sobre Incidente Kenneth Morales Valle" en el cual indican haber examinado el Informe y la recomendación de la Oficina de Recursos Humanos y concurren en cuanto a las medidas correctivas a imponerle.[16]

21. El 21 de septiembre de 2021, el Secretario de DRNA, Rafael A. Machargo Maldonado, le envió una carta titulada "Reprimenda escrita/pago cantidad no cubierta por seguro."[17]

22. En la carta del 21 de septiembre de 2021, el DRNA le informó a Morales Valle la decisión de imponerle la sanción disciplinaria de reprimenda escrita y el pago de $124.00 por concepto de la cantidad de las reparaciones no sufragadas por MAPFRE.

El TPI declaró en su *Sentencia* No Ha Lugar el recurso de revisión judicial del laudo de arbitraje presentado por el DRNA, y confirmó así el *Laudo de Arbitraje* Núm. L-23-010, emitido por CASP en el caso AQ-21-0427, en el cual determinó que la reprimenda

---

[13] Véase nota al calce 12, a las págs. 311-319.
[14] *Id.*, a la pág. 331.
[15] *Id.*, a las págs. 320-326.
[16] *Id.*, a las págs. 340-342.
[17] *Id.*, a las págs. 343-348.

escrita impuesta al Sr. Morales Valle incumplió con las disposiciones del Artículo 28 del Convenio Colectivo, por lo cual le ordenó a la DRNA dejarla sin efecto.[18]

Aún inconforme, el 14 de diciembre de 2023, el DRNA, acudió ante nos mediante el recurso que nos ocupa. Señala la comisión del siguiente error:

> Erró el Tribunal de Primera Instancia al confirmar el Laudo de Arbitraje emitido por la CASP y concluir que en el Artículo 28 del Convenio Colectivo es una aplicación a este caso a pesar de ser contrario a su texto y una interpretación integral del mencionado documento.

Así las cosas, el 18 de diciembre de 2023, le concedimos un término de diez (10) días a la parte recurrida para presentar su escrito en oposición. En cumplimiento con lo ordenado, el 29 de diciembre de 2023, la SPU presentó su *Oposición a Expedición de Certiorari.*

Con el beneficio de las comparecencias de ambas partes, procedemos a resolver.

## -II-

## A.

En lo pertinente al presente caso, la Regla 32(D) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.32(D), establece que **el recurso de *certiorari* es el vehículo procesal adecuado para revisar las resoluciones, órdenes o sentencias finales de un laudo de arbitraje del TPI.** (Énfasis nuestro).

El recurso de *certiorari* es "un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior." *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). Véase, además, *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *Pueblo v. Díaz de León*, 176 DPR

---

[18] Apéndice Anejo V de la *Petición de Certiorari*, a las págs. 349-364.

913, 917 (2009); *García v. Padró*, 165 DPR 324, 334 (2005). En el ámbito judicial, el concepto discreción "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho." *IG Builders et al. v. BBVAPR*, supra, pág. 338. La discreción, "es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León v. AIG*, supra, a la pág. 174.

En el caso particular del Tribunal de Apelaciones, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, limita los asuntos interlocutorios que podemos revisar mediante un recurso de *certiorari*, bajo el entendimiento de que estos pueden esperar hasta la conclusión del caso para ser revisados en apelación. *IG Builders et al. v. BBVAPR*, supra, pág. 337. Al respecto, la Regla 52.1 de Procedimiento Civil, *supra*, dispone específicamente que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 56 y 57, o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. *Íd.* Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. *Íd.*

A su vez, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, establece los criterios que el Tribunal de Apelaciones deberá tomar en consideración al determinar si procede la expedición de un recurso de *certiorari* o de una orden de mostrar causa. Estos son:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia." Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

**B.**

En nuestro ordenamiento, las relaciones obrero-patronales, la negociación colectiva, y los procedimientos de arbitraje están vinculadas al desarrollo económico, a la paz industrial y, por ende, a la consecución de los intereses públicos. *COPR v. SPU*, 181 DPR 299, 319 (2011). El arbitraje está considerado como un método alterno a la intervención judicial para la solución de conflictos. *COPR v. SPU*, *supra*, pág. 362. En Puerto Rico existe una vigorosa política pública a favor del arbitraje obrero-patronal. Se entiende que el arbitraje es el medio menos técnico, más flexible, menos oneroso y, por tanto, más apropiado para la resolución de las controversias que emanan de la relación laboral. *Martínez Rodríguez v. A.E.E.*, 133 DPR 986 (1993). El arbitraje es un procedimiento de

poderes delegados y mediante el convenio colectivo se le confiere la autoridad al árbitro para que evalúe y resuelva las controversias que allí se especifican. A. Acevedo Colom, *Legislación protectora del trabajo comentada*, 8va ed. Rev., Puerto Rico, Ed. Ramallo Printing Bros., 2005, pág. 393.

Referente al proceso de arbitraje, el laudo representa la determinación que toma el árbitro respecto a la controversia laboral. *COPR v. SPU, supra*, pág. 368. Se ha establecido que el laudo de arbitraje no es ni un contrato ni una sentencia, pero disfruta de la naturaleza de ambos. *Íd.*, pág. 328. El contenido del laudo de arbitraje incluye dos elementos principales: 1) la parte sustantiva de derecho en la que se expone la razón de la decisión y, 2) la parte dispositiva en la que se establece el remedio a la disputa. La emisión del laudo termina la función adjudicativa del árbitro. *Íd.*, en las págs. 368-369.

Referente a la revisión judicial de los procesos de arbitraje, nuestro más alto foro ha expresado que, aunque la intervención no esté vedada, ante un convenio de arbitraje lo más prudente es la abstención judicial. *U.C.P.R. v. Triangle Engineering Corp.*, 136 DPR 133 (1994). Por ello, cuando se acuerda el uso del arbitraje como mecanismo para ajustar las controversias, se crea un foro sustituto a los tribunales de justicia, cuya interpretación merece gran deferencia. *López v. Destilería Serrallés*, 90 DPR 245 (1964); *J.R.T. v. Junta Adm. Muelle Mun. de Ponce*, 122 DPR 318 (1988).

Es por esto, que la revisión de los laudos de arbitraje se circunscribe a la determinación de: **(1) la existencia de fraude, (2) conducta impropia, (3) falta del debido proceso de ley, (4) violación a la política pública, (5) falta de jurisdicción o, (6) que el laudo no resuelve todos los asuntos en controversia.** No obstante, si las partes pactan que el laudo arbitral sea conforme a derecho, los tribunales podrán corregir errores jurídicos en atención

al derecho aplicable.[19] De igual modo, las decisiones de los tribunales de primera instancia, de las agencias administrativas y los laudos arbitrales se reputarán persuasivas. *Íd.* En tal supuesto, la revisión judicial de los laudos de arbitraje es análoga a la revisión judicial de las decisiones administrativas. *Rivera v. Dir. Adm. Trib.*, 144 DPR 808 (1998); *Condado Plaza v. Asoc. Emp. Casinos PR*, 149 DPR 347 (1999); *UCPR v. Triangle Engineering Corp.*, supra. Sin embargo, el Tribunal Supremo ha aclarado que la intervención judicial no se justifica por una mera discrepancia de criterio con el árbitro ya que se destruiría la esencia de los procesos de arbitraje. *UGT v. Centro Médico del Turabo*, 208 DPR 944, 929 (2022). Por lo tanto, es la norma que los foros judiciales apelativos tendrán la autoridad para revisar todas las cuestiones de derecho sustantivo resueltas por el árbitro para poder determinar si son correctas. *COPR v. SPU*, supra, pág. 370. Es decir, procede la anulación solo si no se ha resuelto la controversia conforme a derecho. *Íd.*

### c.

El convenio colectivo constituye la ley entre las partes que lo suscriben, siempre que no contravenga las leyes, la moral ni la Constitución. *Pérez v. Autoridad de Fuentes Fluviales*, 87 DPR 118, 122 (1963). El convenio colectivo recoge las normas que habrán de marcar las relaciones entre patronos y empleados por lo que sus términos y condiciones obligan tanto al patrono como a la unión y a sus miembros. *J.R.T v Junta Adm. Muelle Mun. de Ponce,* 122 DPR 318, 333 (1998). Al pactar su contenido, las partes deben cumplirlo con estricta rigurosidad. Ni el patrono ni los obreros pueden pretender beneficiarse de ciertas cláusulas y rechazar otras. *COPR v. SPU*, supra, seguido en *Aut. Puertos v. HEO*, 186 DPR 417 (2012).

---

[19] Cuando el procedimiento de arbitraje es conforme a derecho, ello significa que el árbitro no puede ignorar o dejar pasar por desapercibidas las normas interpretativas, en el campo laboral, de derecho sustantivo emitidas por el Tribunal Supremo de Estados Unidos, y el de Puerto Rico. *J.R.T. v. Hato Rey Psychiatric Hosp.*, 119 DPR 62, 68 (1987).

El Artículo 27 del Convenio Colectivo establece el procedimiento para la resolución de quejas y agravios entre las partes. Dicha cláusula del convenio colectivo opera una vez la agencia ha impuesto la medida disciplinaria contra el empleado. La Sección 1 del Artículo 27 del Convenio Colectivo define la queja de la siguiente manera:

**Sección 1 Definición de Queja**

Una queja es cualquier controversia, disputa o reclamación, presentada por escrito por La Unión o por La Agencia, que concierne la interpretación, aplicación, definición o violación, en cualquier forma, de cualquier cláusula de este Convenio Colectivo o de cualquiera otra disposición o de un derecho de los empleados contenida en las Leyes del estado Libre Asociado, Leyes federales aplicables, Reglamentos Internos, Cartas Circulares, Órdenes Ejecutivas, Memorandos del Patrono o cualquier otras que afecten los términos de este Convenio Colectivo.

Por otro lado, el Artículo 28 del Convenio Colectivo Unión Cuerpo de Vigilantes del DRNA Local 3647 SPUPR Concilio 95 AFSCME dispone respecto al procedimiento en caso de querellas presentadas por el público por una falta de un miembro del Cuerpo de Vigilantes lo siguiente:

**Sección 1. Presentación de Querella**
Cualquier persona que tenga conocimiento de que un miembro del Cuerpo de Vigilantes ha incurrido en conducta que constituya falta a las normas de conducta establecidas, podrá presentar una querella formal por escrito al Comisionado del Cuerpo de Vigilantes o al Secretario del DRNA.

**Sección 2. Procedimiento en la Tramitación de la Querella**
El Comisionado del Cuerpo de Vigilantes evaluará la información recibida. Antes de tomar acción notificará al Vigilante de la presentación de la querella y las faltas que se le imputan. Acto seguido en no más tarde de veinte (20) días, solicitará al Comité de Ética e Integridad del Cuerpo de Vigilante que proceda a realizar una investigación administrativa a los fines de evidenciar por escrito las faltas que se le imputan al vigilante. La investigación se completará dentro de los treinta y cinco días laborables desde la fecha en que el Comisionado del Cuerpo de Vigilantes solicitó la misma. Como parte de la investigación, el Vigilante imputado podrá ser entrevistado para que pueda manifestar su posición.
El informe deberá tener, pero sin limitarse, los hechos alegados y determinados, el nombre de los testigos presenciales, la versión del Vigilante investigado, evidencia documental que sostenga la acción que se

recomienda (podrá incluir declaraciones juradas de los testigos y del vigilante), normas que se determinaron infringidas (si alguna) y medidas correctivas recomendadas conforme a las Guías para la Aplicación de Medidas Correctivas del DRNA según vigente y Reglamento del Cuerpo de Vigilantes del DRNA.

El Comisionado del Cuerpo de Vigilantes referirá el informe con los hallazgos a la Oficina de Recursos Humanos y copia a la Unión. La Oficina de Recursos Humanos referirá a la Oficina de Asuntos Legales no más tardes de treinta y cinco (35) días laborables sus recomendaciones. La Oficina de Asuntos Legales analizará las recomendaciones y preparará la acción disciplinaria para la firma del Secretario no más tarde de veinte (20) días laborables. A partir de la notificación de esta acción disciplinaria se continuará con el procedimiento disciplinario establecido en este convenio.

**Sección 3. Investigación**
La Agencia vendrá obligada a realizar la investigación en un periodo no mayor de noventa (90) días y someter su informe con recomendaciones sobre las sanciones correspondientes en [un] periodo no mayor de cinco (5) días calendarios al terminar la investigación.

**Sección 4. Expedientes**
La Agencia entregará copia de todo el expediente relacionado al representante autorizado de la Unión. Del empleado(a) no estar de acuerdo con la decisión tomada por la Agencia recurrirá al procedimiento del Albitraje acelarado.

**Sección 5. Reconocimiento de la Autoridad Nominadora**
Se considera como autoridad al Secretario del Departamento de Recursos Naturales y Ambientales.

**Sección 6. Notificación en Investigaciones Administrativas**
Cuando la Agencia se proponga iniciar una investigación administrativa cualquier miembro de la Unidad Apropiada (B) lo notificará con **veinte (20) días de antelación** a la persona investigada y a la Unión. Luego que cumpla con la notificación y la Agencia proceda hacer dicha investigación deberá ser completada dentro de un término de **noventa (90) días laborables**.

**Sección 7. Archivo de la Querella**
De la Agencia no cumplir con estos términos y/o requisitos de querella y/o cargos contra el empleado(a) serán archivados y eliminados de sus expedientes y no podrán ser utilizados en investigaciones futuras.

**Sección 8. Aplicabilidad**
Lo expresado en la sección 7 será aplicable a Vistas Administrativas por posibles faltas al Reglamento del Cuerpo de Vigilantes y/o al Reglamento de Personal de DRNA.

**Sección 9. Prohibición de Doble Sanción por el Mismo Incidente**
Ningún empleado será sancionado más de una vez por los mismos hechos o circunstancias. (Énfasis suplido.)

**D.**

El DRNA, en virtud de la autoridad que le confiere la Ley Núm. 23 de 20 de junio de 1972, según enmendada, mejor conocida como *Ley Orgánica del Departamento de Recursos Naturales y Ambientales*, 3 LPRA sec. 151 *et seq.*;[20] la Ley Núm. 1 de 29 de junio de 1977, según enmendada, mejor conocida como *Ley de Vigilantes de Recursos Naturales del Departamento de Recursos Naturales y Ambientales*, 12 LPRA ant. sec. 1201 *et seq.*; y la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, mejor conocida como *Ley de Procedimiento Administrativo Uniforme*, 3 LPRA ant. sec. 2101, *et. seq.*,[21] adoptó el 6 de diciembre de 2011 el *Reglamento del Cuerpo de Vigilantes de Recursos Naturales y Ambientales*, Reglamento Núm. 8114 (en adelante, Reglamento).

El Artículo 2 de dicho Reglamento establece que el propósito de este es:

¨[d]ar cumplimiento al mandato de Ley y propiciar el desempeño eficiente de las funciones asignadas al Cuerpo de Vigilantes de Recursos Naturales y Ambientales, garantizando una administración eficiente y proporcionando a los Miembros del Cuerpo, el pleno disfrute de los principios de mérito en el servicio público, que les garantiza la Ley Núm. 184 de 3 de agosto de 2004, según enmendada, mejor conocida como *Ley Para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico.*¨

Por otro lado, el Artículo 3 establece que el mismo es aplicable

---

[20] Ley fue derogada y sustituida por la Ley Núm. 110-2020, según enmendada, conocida como *"Ley del Cuerpo de Vigilantes de Recursos Naturales y Ambientales del Gobierno de Puerto Rico"*.

[21] La Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como la *"Ley de Procedimiento Administrativo del Estado Libre Asociado de Puerto Rico"*, 3 L.P.R.A. sec. 2101, *et. seq.* fue derogada y sustituida por la Ley Núm. 38-2017, según enmendada, conocida como *"Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico"*, 3 L.P.R.A. sec. 9601, *et. seq.* Se hace referencia a la ley anterior por ser la vigente al momento de la aprobación del Reglamento.

a los Miembros del Cuerpo de Vigilantes de Recursos Naturales y Ambientales. Así como también que los términos y condiciones de empleo que establece este Reglamento aplicarán a los(as) empleados(as) en la medida que las mismas no sean incompatibles con las disposiciones del Convenio Colectivo vigente.

Respecto a los *Aspectos Disciplinarios* la Sección 7.3 (b) el Reglamento establece que el procedimiento para presentar querella por falta a las normas de conducta y para la aplicación de acciones disciplinarias es como sigue:

i. **Cualquier persona, ciudadano(a), empleado(a) del Departamento** o del Cuerpo que tenga conocimiento de que un Miembro del Cuerpo ha incurrido en una conducta que constituya una falta a las normas de conducta establecida, podrá presentar una querella, la cual será evaluada por el(la) Comisionado(a).

ii. De tener mérito, el(la) Comisionado(a), **no más tarde de veinte (20) días**, ordenará a la Oficina de Ética e Integridad, que realice una investigación administrativa a los fines de evidenciar por escrito las faltas que se le imputan al Miembro del Cuerpo. **La investigación se completará dentro de los treinta y cinco (35) días laborables, desde la fecha que el(la) Comisionado(a) solicitó la misma.** De la investigación requerir tiempo adicional al establecido en este Artículo, se le notificará a las partes afectadas.

[…]

iv. El(La) Comisionado(a) evaluará el informe y remitirá los hallazgos a la Oficina de Recursos Humanos. **La Oficina de Recursos Humanos referirá a la Oficina de Asuntos Legales no más tarde de treinta y cinco (35) días laborables sus recomendaciones.** La Oficina de Asuntos Legales analizará las recomendaciones y preparará la acción disciplinaria correspondiente para la firma del (de la) Secretario(a), **no más tarde de veinte (20) días laborables**. <u>**En los casos de los Miembros del Cuerpo perteneciente a una Unidad apropiada, a partir de la notificación de esta acción disciplinaria, se continuará con el procedimiento disciplinario establecido en las leyes y reglamentos aplicables o el Convenio Colectivo vigente.**</u> El Personal no cubierto por el Convenio Colectivo podrá solicitar vista administrativa informal dentro de los quince (15) días del recibo de la formulación de cargos.

[...]

### III

El DRNA nos plantea que erró el foro primario al confirmar el Laudo de Arbitraje emitido por la CASP y concluir que el Artículo 28 del Convenio Colectivo es de aplicación al caso a pesar de ser contrario a su texto y de hacer una interpretación integral del mismo.  No le asiste la razón. Veamos.

Del *Laudo de Arbitraje* emitido por CASP el 10 de abril de 2023 surge que antes de entrar a discutir la sumisión de la controversia atendió la controversia levantada por la Unión respecto a que la medida disciplinaria no fue tramitada conforme a derecho según los términos dispuestos en la Sección 6 del Artículo 28 del Convenio Colectivo.  La Unión arguyó al respecto que eran de aplicación los términos dispuestos en la Sección 6 del Artículo 28 del Convenio Colectivo, *supra*, que estable lo siguiente:

> Cuando la Agencia se proponga iniciar una investigación administrativa cualquier miembro de la Unidad Apropiada (B) lo notificará con **veinte (20) días de antelación** a la persona investigada y a la Unión. Luego que cumpla con la notificación y la Agencia proceda hacer dicha investigación deberá ser completada dentro de un término de **noventa (90) días laborales**. (Énfasis suplido.)

En específico, la Unión alegó que en este caso en particular los hechos que dieron lugar a la medida disciplinaria ocurrieron el 3 de febrero de 2019 y que no fue hasta el 21 de septiembre de 2021, o sea, dos (2) años y siete (7) meses después, de haber ocurrido el incidente que se impone la medida disciplinaria, lo cual excedió el término de noventa (90) días laborales que tiene la Agencia para realizar y culminar la investigación.  Por tanto, la Unión planteó que en el caso de autos no surgió un informe realizado por el DRNA, sino que el único informe que existió fue el realizado por la Administración de Servicios Generales (en adelante, ASG) el cual fue recibido el 6 de mayo de 2021.  Ante estos hechos, argumentó la

Unión que la Sección 7 del Artículo 28 del Convenio Colectivo dispone que de la agencia no cumplir con los términos y/o requisitos de la querella y/o cargos contra el empleado serán archivados y eliminados de su expediente. Por último, llamó la atención respecto a que la Sección 8 del Artículo 28 del Convenio Colectivo expresa que lo dispuesto en la Sección 7 "será de aplicación a Vistas Administrativas por posibles faltas al Reglamento del Cuerpo de Vigilantes y/o al Reglamento de Personal del DRNA."

Por el contrario, al respecto la Agencia arguyó que al caso de autos no le era de aplicación lo dispuesto en el Artículo 28 del Convenio Colectivo, *supra*, y que lo aplicable eran las disposiciones del Artículo 27 del Convenio Colectivo, *supra*. En específico argumentó que lo ocurrido fue un accidente de tránsito por faltas al convenio y al reglamento de medidas disciplinarias; por lo cual se hizo una investigación que concluyó con la medida disciplinaria.

CASP al respecto determinó que las Secciones de la 1 a la 4 del Artículo 28 del Convenio Colectivo no le son aplicable a la situación fáctica del caso de marras. Sin embargo, concluyó que las Secciones 6 a la 8 del Artículo 28 del Convenio Colectivo si le eran de aplicación al caso de autos. En específico expresó lo siguiente:

> Esto por lo que dio base a la medida disciplinaria fue un accidente de tránsito en que estuvo envuelto el QUERELLANTE y el vehículo Oficial de la AGENCIA el cual sufrió daños. Ante estos hechos **la AGENCIA debió haber hecho una investigación para poder concluir en la medida disciplinaria que nos ocupa**.
>
> De la prueba presentada surgió que hubo un accidente de tr[á]nsito el 3 de febrero de 2019. A partir de dicha fecha la AGENCIA tenía veinte (20) días para notificar [a la] UNION que pretendía iniciar una investigación. Una vez cumpliera con ella tenía noventa (90) días para completar la investigación. Esto quiere decir que hasta el 24 de mayo de 2019. Una vez cumpliera con ambos términos podía de entenderlo así, imponer la medida disciplinaria que correspondiera. **De la prueba presentada no surgió que hubo una notificación al QUERELLANTE ni a la UNION que se pretendía realizar alguna investigación. No se presentó algún informe de investigación de la AGENCIA por lo que no cumple con el requisito que dispone la Sección 6.**

**Por lo que podemos concluir que la AGENCIA no realizó su propia investigación cumpliendo así con dicha sección.** Como ya mencionamos la fecha de los hechos fueron el 3 de febrero de 2019 y la AGENCIA tenía hasta el 24 de mayo de 2019, para completar la investigación e imponer la medida disciplinaria. Dicha medida disciplinaria fue impuesta el 21 de septiembre de 2021 por lo que está fuera de término de noventa [(90) días] que dispone el [A]rtículo 28, Seçción 6 del convenio colectivo. Por tanto, la medida disciplinaria impuesta al QUERELLANTE no fue [conforme] a las disposiciones del convenio colectivo. Por lo que[,] determinamos dejar sin efecto la misma conforme a las Secciones 7 y 8 del convenio colectivo.[22]

De la documentación que obra en el expediente judicial surge que el mismo día del accidente 3 de febrero de 2019 se cumplimentó el *Informe de Accidente de Tránsito* y el *Informe Amistoso de Accidente* y que el 5 de marzo de 2019 se presentó en la ASG *Aviso de Accidente[23],* documentación de la cual surge con claridad para el DRNA la fecha del accidente. Es importante puntualizar que del análisis minucioso del expediente y de los proyectos de sumisión presentados por la DRNA sometidos ante el proceso de arbitraje no se hizo referencia a las disposiciones de la reglamentación de la ASG.

Sin embargo, el *Reglamento para la Administración y Control de Vehículos de Motor y Otros Medios de Transporte del Gobierno de Puerto Rico*, Reglamento 9177, Departamento de Estado, 12 de mayo de 2020, el cual es de aplicación a "todas las agencias que componen la Rama Ejecutiva del Gobierno de Puerto Rico, así como a sus empleados y funcionarios, con excepción de aquellas entidades gubernamentales que estén exentas por ley de la jurisdicción de la Administración, las corporaciones públicas y sus municipios." Artículo 3 (a) del Reglamento 9177. [24] La Parte Décimo Primera del Reglamento 9177 contiene toda la normativa relacionada a los casos de accidentes. En específico el Artículo 103 (d)(2) establece que luego de la correspondiente investigación junto a la prueba

---

[22] Véase nota al calce número 2, pág. 87.
[23] Véase nota al calce 18, a las págs. 328-330 y 336-338.
[24] Este reglamento estaba vigente al momento de hacerse la investigación.

recopilada de entenderse que se debe responsabilizar al conductor por negligencia u otros actos se dispone que: "[...] se enviará copia del expediente del caso al jefe de la agencia para la cual el conductor trabaja, quien determinará si se sostiene una imputación de negligencia o de violación a las normas establecidas en este Reglamento." El Reglamento 9177 es claro respecto a que es el DRNA a quien le compete determinar si se va a iniciar un proceso de investigación contra el empleado envuelto en el accidente, ello conforme a lo pactado en el Convenio Colectivo suscrito entre las partes. En el mejor de los escenarios para la Agencia, de comenzar a decursar los términos dispuestos en las Secciones 6 a la 8 del Artículo 28 del Convenio Colectivo, el 6 de mayo de 2021 fecha en la cual se notificó el Informe del Programa de Transporte de la ASG, hay que concluir que el DRNA no cumplió con lo estipulado en el convenio colectivo. En el caso ante nos, el DRNA sin que se hubiese realizado la notificación mandatada en el término de veinte (20) días al Sr. Morales Valle y realizado la investigación requerida en el término de noventa (90) días le impuso una reprimenda por escrito. En específico, el DRNA en violación de la estipulado en el convenio le notificó el 21 de septiembre de 2021 al Sr. Morales Valle una misiva titulada *"Reprimenda Escrita/Pago Cantidad No Cubierta Por Seguro"* en la cual le impuso como sanción una reprimenda escrita y el pago de $124.00 por concepto de las reparaciones no cubiertas por MAPFRE.

Contrario a lo alegado por el DRNA, de una lectura mesurada del Artículo 27 podemos establecer que el mismo opera una vez la Agencia ha tomado alguna acción contra el empleado. El procedimiento de Quejas y Agravios se lleva por conducto de la Unión, una vez la medida disciplinaria es notificada. Por lo tanto, no es cierto que el Artículo 27 del Convenio Colectivo sirva a los propósitos de establecer el procedimiento de investigación de una

querella relacionada a una falta administrativa cometida por un miembro del Cuerpo de Vigilantes.

Es harto conocido que, **el título no hace la cosa**, sí su contenido.[25] Surge del contenido del Artículo 28 del Convenio Colectivo que **"cualquier persona"** puede realizar una querella. El mencionado artículo no hace excepciones sobre el tipo de persona que pueda realizar una querella formal.

Del análisis normativo anteriormente expresado, hay que concluir que no erró el TPI en su determinación de que lo resuelto por el CASP en el Laudo de Arbitraje Núm. L-23-010, fue conforme a derecho, pues se pretirió el trámite dispuesto en el Artículo 28 del Convenio Colectivo.

Por tanto, el foro primario no incidió al emitir su dictamen y confirmar el *Laudo de Arbitraje* Núm. L-23-O1O, emitido por CASP en el caso AQ-21-0427, en el cual determinó que la reprimenda escrita impuesta al Sr. Morales Valle incumplió con las disposiciones del Artículo 28 del Convenio Colectivo, por lo cual procede que la DRNA deje sin efecto la misma. El error señalado no se cometió.

**IV**

Por los fundamentos antes expuestos, expedimos el auto de *Certiorari* y confirmamos la *Sentencia* recurrida.

NOTIFÍQUESE.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[25] Véase *García Morales y Otros v. Padró Hernández y Otros*, 165 DPR 324 (2005).